# ILLINOIS.

| 42 | 9 |
| 37a | 487 |

| 42 | 9 |
| e207 | ³504 |

## THIRD GRAND DIVISION.

### APRIL TERM, 1866.

---

### ZACHARY L. TAYLOR

### *v.*

### HUGH THOMPSON *et al.*

1. TAXATION TO PAY SOLDIERS' BOUNTIES — *constitutionality of the law authorizing it — what is taxation for "corporate purposes."* The act of 5th of February, 1865, authorizing the towns in certain counties therein named to levy a tax to pay bounties to persons who should thereafter enlist or be drafted into the army of the United States, a vote of the township being first taken, is constitutional, it being a tax for "corporate purposes," within the meaning of the fifth and sixth sections of article nine of the Constitution of this State.

2. In giving a construction to those sections of the Constitution, which authorize the legislature to empower towns and other municipal corporations to impose taxes for "corporate purposes," the phrase "corporate purposes" should not be given so narrow and rigid a construction as to render a self-imposed tax null merely because it might be a debatable question whether it would promote the corporate welfare or not; where such a tax possesses the constitutional quality of uniformity in respect to persons and property, courts should not interfere to annul it, except it be an exceedingly clear case that it is not for a "corporate purpose."

3. A tax for "corporate purposes" may be defined to mean, a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it; and if it appear that a tax has been voted and levied with an honest purpose to promote the general well-being of the municipality, and was not designed merely for the benefit of individuals or of a class, its collection should not be stayed by the courts.

4. So a tax levied by a town for the purpose of paying bounties to such as would volunteer in the army during the late war, in order thereby to exempt the town from an impending draft or conscription, may be fairly considered a tax for the common good and for a ": corporate purpose." Nor would the tax be deprived of that character by the consideration that a portion of the owners of property in the town, which would be subject thereto, would not be directly benefited thereby, by reason of non-residence or other ground of exemption from the draft which is sought to be avoided.

5. SAME — *validity of that portion of the law which includes soldiers already drafted.* The question as to the validity of that portion of the law in question which authorizes a tax to pay bounties to men who had already been drafted, is not decided; but there is an obvious difference between bounties to drafted men and bounties to volunteers.

6. BILL IN CHANCERY *to enjoin the collection of a tax — its requisites.* Where a bill in chancery was filed for the purpose of enjoining the collection of a tax which was alleged to have been levied "for the purposes and uses recited in" a certain act of the legislature, and the tax for some of the purposes mentioned in the act might be lawfully levied, a demurrer to the bill should be sustained, although for other purposes mentioned a tax could not be authorized, because it might be that all were levied for a lawful purpose.

7. When a bill is filed to enjoin the collection of taxes on the ground that they are in part illegal, the bill must show to what extent they are so, in order that the court may enjoin only the illegal portion, or that they are so levied that it is impossible to discriminate between the legal and illegal portion.

APPEAL from the Circuit Court of Livingston county; the Hon. CHARLES R. STARR, Judge, presiding.

A sufficient statement of the case will be found in the opinion of the court.

Mr. JOHN M. BARRET, for the appellant.

Mr. L. E. PAYSON, for the appellees.

Mr. JUSTICE LAWRENCE delivered the opinion of the Court:

On the 5th of February, 1865, the legislature passed a law (page 102, private Laws of 1865), authorizing the towns in certain counties therein named, to levy a tax to pay bounties to persons who should thereafter enlist or be drafted into the army of the United States, a vote of the people of the township being first taken. The people of the township of Odell, in the county of Livingston, voted a tax under this law, and the appellant, alleging that he was a non-resident of the township, but owning property there, filed his bill to enjoin the township officers from its collection. The tax is resisted on the ground that it is unconstitutional.

The 5th and 6th sections of article 9 of the constitution are as follows :

" 5. The corporate authorities of counties, townships, school-districts, cities, towns and villages, may be vested with power to assess and collect taxes for corporate purposes ; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same ; and the general assembly shall require that all property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under the authority of law."

" 6. The specifications of the objects and subjects of taxation shall not deprive the general assembly of the power to require other objects or subjects to be taxed in such manner as may be consistent with the principles of taxation fixed in the Constitution." See art. 9, sec. 5 and 6.

It is urged that the tax in question is not a tax " for corporate purposes," within the meaning of the foregoing provision.

While there are some objects of taxation so marked and distinctive that no person would feel any difficulty in determining whether they did or did not fall under the head of " corporate purposes," there are many so uncertain in their character, that the most intelligent and candid minds would differ in regard to them. When therefore the legislature has authorized the levy of certain taxes, and has thereby declared them to be, in its opinion,

taxes for corporate purposes, we should not hold such taxes to be unconstitutional, merely because their corporate character admits of some debate. A proper respect for the legislative department of the government requires us to regard its acts as *prima facie* constitutional, and when the question turns upon the precise meaning of a phrase of ambiguous import, we must needs hesitate long before we pronounce an act of the legislature void.

Again, the words " corporate purposes," as used in the Constitution, should not receive a narrow or rigid construction. The framers of that instrument must have designed to leave a large discretion to the legislature as to what should be considered as falling within that phrase. Under democratic forms of government the object of those clauses in a written Constitution which restrict the power of the legislature, is to preserve a minority from injustice at the hands of a majority. Under the Constitution of Illinois, this object is attained, so far as relates to taxation, by the provision in the 2d section of the 9th article requiring taxation to be by valuation " so that every person and corporation shall pay a tax in proportion to the value of his or its property." This provision, so long as it is observed, secures equality of taxation between all classes and individuals, and thereby protects every class from oppression by any other. The legislature will necessarily be composed, in a very large degree, of persons who are not only property holders themselves, but the representatives of property holders, and as every tax imposed or authorized must bear equally upon all property within the district where it is to be levied, and by whose votes it is to be raised, the sharp dictates of self-interest may be safely relied upon as a security against oppression or unjust taxation. That the framers of the Constitution deemed they had furnished all the safeguards that were necessary in this behalf, when they provided for absolute equality of taxation, and that they thought it unwise to hamper the legislature by any restrictions as to either the subjects or the purposes of taxation, is evident from the sixth section of the 9th article, above quoted. That section provides that the specification of

the objects and subjects of taxation shall not deprive the legis-
lature of the power to require other objects or subjects to be
taxed. We do not quote this as showing that the legislature
may authorize a municipality to impose taxes for other than
corporate purposes, but as illustrating the fact, that the framers
of the Constitution thought proper to rely upon the great prin-
ciple of absolute equality of taxation, as a guaranty against its
abuse, rather than upon a minute specification of its subjects
and aims. And who will deny that this was a wise abstinence
on their part, when we take into view the ever-varying emer-
gencies of society, and the rapid developments and unforeseen
needs of our modern civilization?

We have made these general remarks, for the purpose of
showing, that, when the Constitution authorized the legislature
to empower municipalities to impose taxes for corporate pur-
poses, with the additional provision, that such taxes should be
"uniform in respect to persons and property, within the juris-
diction of the body imposing the same," it was not designed
that the phrase "corporate purposes" should receive so narrow
a construction as to justify the courts in holding that a muni-
pality should not tax itself, although authorized by act of the
legislature, because it might be a debatable question whether
the proposed tax would promote the corporate welfare or not.
That a tax may be so clearly beyond this limit as to call for
the interposition of the courts, we do not deny. What we
insist upon is, that, unless the case is exceedingly clear, we
should not interfere to annul a self-imposed tax, possessing the
constitutional quality of uniformity in respect to persons and
property.

We proceed to consider the question whether a tax imposed
for the purpose of raising bounties to secure volunteers in the
late war, can be properly called a tax for "corporate purposes."
We may define this phrase to mean, a tax to be expended in a
manner which shall promote the general prosperity and wel-
fare of the municipality which levies it. That every individ-
ual tax payer shall have a direct interest in the object for
which the tax is laid, or be directly benefited by its expend-

iture, is unattainable in the very nature of things. General results are all that can be expected, and if it appear that a tax has been voted and levied with an honest purpose to promote the general well-being of the municipality, and was not designed merely for the benefit of individuals, or of a class, its collection should not be stayed by the courts. In a community, for example, composed of the various religious sects, it could hardly be contended that a tax levied upon all, to build a church or support a clergyman for the benefit of a particular denomination, was a tax for a corporate purpose. So too, if a tax was levied in order that its proceeds might be paid over, as a gratuity, to some individual, who enjoyed, for the time being, the favor of the multitude, there would be no pretense for calling it a tax for municipal or corporate purposes.

But on the other hand, a very considerable portion of the taxes in every municipality are of such character as not directly to benefit non-resident tax payers, nor indeed every resident. Thus, the creation of a police force, the establishment of a reform school for juvenile offenders, or a hospital for persons ill with contagious diseases, would not directly benefit a non-resident taxed for their support, and yet no person would deny that these are proper ends of municipal taxation and justly included in the phrase "corporate purposes." They are so, because, while individuals are benefited by the expenditure of such taxes, yet their purpose and object are the security of the public against public evils, and the promotion of the corporate welfare.

Where, as in the case before us, the solution of a question turns upon the meaning of a phrase, we must ascertain in what sense it has been used in analogous cases. We reason from conceded truths, and we may take the foregoing illustrations as admitted instances of taxation for corporate purposes. They are established by fixed and uncontroverted usage. The tax sought to be enjoined in the case before us is novel in its character because the result of new emergencies, but can it be fairly said to be any less a tax for a corporate purpose than taxes for the objects above named? Would the opening of a

road, the laying-out of a public square, the purchase of a fire engine, the erection of an alms-house, be as important to the general interests of a community, as was exemption from the necessary but dreaded conscription during the last years of the late war?

Doubtless, in all communities, there were tax payers who would not be personally liable to the draft, but who was there, in any community, so isolated as not to be liable to be stricken by it through his kindred or friends, or injured in his pecuniary interests through the complex relations which men bear to one another in society? The teachers who educate our children, the clergy who administer the consolations of our holy religion to the sick and dying, the magistrates who guard our laws, the mechanics who carry on our industries, the farmers who supply our food, were equally liable to be swept from the various communities which were thriving upon their labors. And can it be truthfully said that the sudden tearing away of whole classes of such men was not an injury to the entire community, and that a tax, by which it could be avoided, was not a tax for a corporate purpose? But, besides all this, many of these men would leave behind them families that had derived their support from the daily toil of the husband or the father, and these families, in his absence, would fall upon the community for support.

These evils were not wholly avoided by furnishing volunteers, but they were immeasurably lessened. For the volunteers were largely made up of the youth of the country — promising and gallant, it is true, and consecrating forever the battle fields where so many of them laid down their lives — but still so young that a large part of them had not become the heads of families, or settled as a permanent element in society. The departure therefore of fifty or a hundred volunteers from a small community, inflicted upon its general well-being and prosperity a far less violent shock than would have been caused by the loss of the same number of persons torn away by the indiscriminate chances of the draft; and, in view of this fact, a tax levied for the purpose of saving a community from the

evils inseparable from a draft, may be fairly considered a tax for the common good.

There is another consideration which lends a potent support to the validity of this tax. Under the system of drafting adopted by the federal government, each city and township in the state was assessed for its respective quota of men. It was determined what amount of military service was due to the government from each municipal community, under the acts of congress to which all owed obedience. The rendition of this service was a burden resting on the entire community, and no more due from one individual member of it than from another. True, the service would only be exacted from persons within certain ages, but the exemption was granted, not because the service was not morally due from all alike, but because, under and over certain ages, the law presumed a physical disability to render it. The service being thus due from the entire population of a town, and, as citizens of a common country, due from all the constituents of the population alike, the legislature authorizes the town to relieve itself from the burden, if it can do so, by hiring competent men voluntarily to perform the required service. By the chances of the draft this burden might fall on the shoulders of ten men out of every hundred, and yet morally it would no more belong to any one of the ten who might be taken, than to any one of the ninety who might be left. Even legally, it would devolve on them only because blind chance so determined. Now, if this burden, properly resting on the whole community, could be changed into the form of voluntary service, and thus rendered not only vastly less onerous to the entire community, but be equally distributed among them in the form of a pecuniary tax, can there be really any question that such a tax would be a tax for a " corporate purpose?" The service was assessed against a town as a corporate community, and as such community it renders the service by the aid of a corporate tax. The tax is levied, not for the benefit of the volunteers who receive its proceeds, but for that of the community to which it brings relief.

We hold the acts of the legislature, authorizing the levy of these taxes, to be constitutional.

We must not, however, be understood as expressing any opinion as to that portion of the law which authorizes the payment of a bounty to men already drafted. That there is a difference between bounties to drafted men and bounties to volunteers, is obvious, and whether the former are sustainable is a question which we will not decide until called upon to do so by the record. The case before us does not present that point. It was heard on demurrer to the bill, and the demurrer was sustained. The bill nowhere alleges that any portion of the taxes sought to be enjoined were levied for the purpose of paying bounties to drafted men. The averment is simply that the taxes were levied "for the purposes and uses recited in the act aforesaid." *Non constat*, but that they may have been all levied for bounties to volunteers. Or, if it be said that the averment is in substance that they were partly levied for volunteers and partly for drafted men, then, even if it should be held that the last named purpose was unlawful, the demurrer must still be sustained. If a judgment for taxes is brought to this court, and it appears that it has been rendered for taxes a part of which are illegal, the judgment will be reversed, as in the case of *Campbell* v. *The State*, 41 Ill. 454, because the judgment is a unit. But when a bill in chancery is filed to enjoin the collection of taxes, on the ground that they are in part illegal, the bill must show to what extent they are so, in order that the court may enjoin only the illegal portion, or that they are so levied that it is impossible to discriminate between the legal and illegal portions. There are no such allegations in this bill.

We remark, in conclusion, that taxation for a similar purpose has been held valid by the Supreme Court of Pennsylvania, in the case of *Speer* v. *School Directors of Blairsville*, reported in the September number, 1865, of the Law Register, and by the Supreme Court of Connecticut, in *Booth* v. *Town of Woodbury*, reported in the February number, 1866, of the same magazine.

*Decree affirmed.*