The Chicago, Danville & Vincennes R. R. Co. *et al.*

*v.*

Frederick Smith.

1. Constitutional Law—*general rule.* The question of the repugnancy of a law to the constitution is one of great delicacy; and the judiciary, in justice to the rights of a co-ordinate department of the State government, ought not, and will not, declare a law to be void, except, upon the most deliberate and mature consideration, its repugnance to the constitution is clearly manifest to the understanding.

2. Same. The judicial department being created under the constitution to construe and administer the law, has nothing to do with the policy or expediency of an act of the legislature. The mere fact that an act may be mischievous in its effects, burdensome upon the people, in conflict with our conceptions of natural right, abstract justice, or pure morality, or of doubtful propriety, will not justify the courts in holding it to be beyond the scope of legislative authority.

3. Taxation—*corporate authorities.* Town officers, under the township system, making an appropriation to a railroad company, in pursuance of law, upon the vote of a majority of the legal voters of the town authorizing the same, are " corporate authorities " of a municipal corporation, who are authorized to levy taxes under the constitution of 1848.

4. TAXATION—*corporate purpose.* A tax or appropriation for a corporate purpose is one for the benefit of the inhabitants of the municipality. Taxes levied by township authorities to aid in the construction of a railroad is a corporate purpose; and, in this respect, the distinction between a donation in aid of a railroad and a subscription to the capital stock of the corporation, is more shadowy than real. The power is granted in consideration of the public benefits, and these are as great in one case as in the other.

5. SAME—*railroads whether private or public.* If it were true that railroad corporations are strictly private, that the benefits resulting to the public from the construction of railroads are purely incidental, and that the profits arising from their operation merely enrich the individuals composing the private corporation, it might logically follow that all laws imposing taxes to aid in the building of railroads to be owned and operated by such corporations are unconstitutional, because appropriating taxes to a private and not a public purpose.

6. TAXATION—*for a railroad is a public purpose.* This court has decided that railroad corporations are created for the public good; to increase the facilities and conveniencies and promote the great ends of commerce; and that they can not organize monopolies, or make contracts injurious to the public interests. The courts for many years past have recognized railroads as public improvements, made to subserve the public interests. When it is also considered that the legislature and the courts have uniformly held that they are of such public use as to justify the exercise of the right of eminent domain, the position is thereby much strengthened that taxation for such an enterprise is for a public purpose, although the distinction between the right of eminent domain and taxation is manifest.

7. SAME. In view of the past history of railroads; the impossibility of dispensing with them; the necessity for an increase in their number, to open more outlets for the products of our fertile and inexhaustible soil—facts all well known to the legislature—this court must hold that, even if the appropriation of taxes in this case was not for a public purpose in the broadest sense, the character of the purpose is involved in such doubt that it can not declare the action of the legislature void.

8. CONSTITUTIONAL LAW—*legislative power.* In the enactment of laws the legislature must exercise its judgment and discretion. As to questions of pure policy and expediency, no express or necessarily implied constitutional provision intervening, it is the sole judge; and if there be grave doubt as to the nature of the purpose, that doubt must be solved in favor of the action of the legislature.

WRIT OF ERROR to the Circuit Court of Will County; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. E. WALKER, for the plaintiff in error.

Mr. G. D. A. PARKS & Mr. CHAS. A. HILL, for the defendant in error.

Mr. JUSTICE THORNTON delivered the opinion of the Court:

Defendant in error filed his bill in the Circuit Court to enjoin the collection of taxes levied under an act of the legislature and in pursuance of a vote of the people, to aid in the construction of a railroad.

The act authorized all towns acting under the township organization law, to appropriate such sums of money as they should deem proper to aid in the construction of the road, to be paid as soon as the track should have been located and constructed through the towns.

The road was completed before the appropriation was made; and it was a donation to the company, and not a subscription to its capital stock.

Upon the hearing the Circuit Court made the injunction perpetual, and pronounced the act unconstitutional.

The officers of the town, who made the appropriation and levied the tax, were the "corporate authorities" of a municipal corporation; and they acted in the premises, after a majority of the legal voters of the municipality had authorized the appropriation, upon the condition of the prior construction of the road.

The only question is as to the power of the legislature to authorize municipalities to subscribe to the capital stock of railroad companies, and to appropriate money, as a donation, to aid in the construction of the roads.

The only difference between this case and numerous cases decided by this court is, that the money appropriated by virtue of the statute in question is a donation instead of a subscription.

But for this difference we might stand securely upon the maxim: *Stare decisis et non quieta movere.* Frequent fluctuations, in the opinions of courts of last resort, involve the

court in absurdities; render the law uncertain; destroy that feeling of reliance so essential to the strength and stability of all authority, and produce mischiefs innumerable. The decisions of courts had better be involved in some error, than subject to change upon every change of the judiciary.

In the discussion of legislative power, we have nothing to do with questions of policy or expediency. The constitution has created the legislative and judicial departments; the one to make the law, the other to construe and administer it. It may be mischievous in the effects, burdensome upon the people, conflict with our conceptions of natural right, abstract justice, or pure morality, and of doubtful propriety in numerous respects; and yet we would not be justified to hold, that it was not within the scope of legislative authority for such reasons.

The question as to the repugnancy of a law to the constitution is always one of much delicacy, and courts will never indulge the supposition, unless the repugnancy is manifest to the understanding.

In *Lane* v. *Dorman*, 3 Scam. 238, this court said: "The determining of a question involving the inquiry whether an exercise of power, by the legislative department of the State, is constitutional, is readily conceded, not only to be a matter of delicacy, but of grave import, and demands the most deliberate and mature consideration. It should not, however, be decided but in cases of clear necessity, and where the character of the act done is in plain and obvious conflict with the constitution."

The law should not be pronounced void in a doubtful case, or upon slight implication. "The opposition between it and the constitution must be clear and strong." *People* v. *Marshall*, 1 Gilm. 672.

The infringement of the constitution must be evident before the courts will interpose and hold the act nugatory. *People* v. *Hatch*, 33 Ill. 130.

In *Ex parte M'Collum*, 1 Cow. 504, Savage, Ch. J. said that

a court ought not to declare a law unconstitutional, unless a case is presented in which there can be no rational doubt.

In delivering the opinion in the case of *Fletcher* v. *Peck*, 6 Cranch, 87, Ch. J. Marshall said: "The question, whether a law be void for its repugnancy to the constitution, is at all times a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by a duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers, and its acts to be considered as void. The opposition between the constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

In the same court, whose decision is chiefly relied on to induce a reversal of the former opinions of this court, equally explicit language, in regard to the duty of courts, has been used.

In *Twitchell* v. *Blodgett*, 13 Mich. 152, Cooley, J. said: "It is conceded to be the settled doctrine of this State, that every enactment of the State legislature is presumed to be constitutional and valid; that before we can pronounce it otherwise, we must be able to point out the precise clause in the constitution which it violates, and that the conflict between the two must be clear, or free from reasonable doubt, since it is only from constitutional provisions, limiting the legislative power and controlling the legislative will, that we derive authority to declare void any legislative enactment."

We might multiply extracts from the opinions of the ablest courts to the same effect. Enough has been cited to show the firm position of the judiciary, that the courts ought not, and, in justice to the rights of a co-ordinate department of the State government, can not, declare a law to be void, without a strong and earnest conviction, divested of all reasonable doubt, of its invalidity.

An objection to this law is urged, which has been made

since the origin of the character of legislation now under consideration.

It is assumed that the taxes levied are to be appropriated to a private and not a public purpose; that the benefits, resulting to the public—the people at large—from the construction of railroads, are merely incidental; that the profits, arising from their operation, enrich the individuals who form the private corporation; and, therefore, all laws imposing taxes to aid in the building of railroads, to be owned and operated by private corporations, are unconstitutional.

If the premises are correct, that the corporations are strictly private, and the benefits to the public purely incidental, the conclusion might logically follow. The argument assumes, as unquestionable, the point to be determined; as true, the fact to be ascertained.

In the enactment of laws the legislature must exercise its judgment and discretion. As to questions of pure policy and expediency, no express or necessarily implied constitutional provision intervening, it is the sole judge. It has also the undoubted right to take a comprehensive view in determining the necessity of a law, and the character of the purpose to be accomplished by it. A court, with any propriety, can not arrogate to itself all power and wisdom in such matters; and if there be grave doubt as to the nature of the purpose, the doubt must always be solved in favor of the action of the legislature.

Concede that taxation for a mere private enterprise is wrong and invalid, is the construction of the road to which the aid is proposed to be given of that character?

It is a road from Lake Michigan to a point opposite Vincennes, in the State of Indiana, traversing nearly the entire length of the State. The road was completed before the payment of any money was asked, though it was built upon the faith of it.

Are the advantages which accrue to the public from the construction and operation of railroads merely incidental in the sense of the term as commonly used? We are inclined

18—62D ILL.

to think that they rather resemble the incident in law, and appertain to, and follow, the principal thing. The benefits resulting to the people of the State, from our system of railroads are untold and incalculable. The mind can scarcely grasp them. Railroads have almost superseded all other means of inter-communication between the several parts of our extensive and growing State. They have become an absolute necessity, indispensable to our increased growth, and to the removal of our immense surplus. They have added millions to our taxable property; given augmented facilities to every department of trade; enriched the mass of the people; largely enhanced the value of our lands; built up manufactures; and brought us into close proximity with the best markets of the country. All share in the blessings flowing from them.

Railroads are, in truth, the people's highways for pleasure, and business, and commerce. Without them our internal trade would languish and die; and our corn and wheat rot in our granaries.

For more than a quarter of a century the courts have recognized and referred to them as public improvements, made for the public good, and to subserve the public interests. *Johnson* v. *The County of Stark,* 24 Ill. 75; *Cin., Wil. & Zanesville R. R. Co.* v. *The Commissioners,* 21 Ohio, (1 *McCook*) 77; *Sharpless* v. *The Mayor,* etc., 21 Penn. (9 *Harris*), 149; *Nichol* v. *Mayor & Aldermen,* 9 Humph. 252; *Goddin* v. *Crump,* 8 Leigh, 120; *Enfield Toll Bridge Co.* v. *Hart & N. H. R. R. Co.,* 17 Conn. 40; *Beckman* v. *Saratoga & Schenectady R. R. Co.,* 3 Paige, 45; *Bloodgood* v. *Mohawk & H. R. R. R. Co.,* 18 Wend. 9; *Newbury Turnpike Co.* v. *Eastern R. R. Co.,* 23 Pick. 326.

The courts, while ready and willing to protect these corporations in all their rights, have uniformly asserted, and seem determined to maintain their obligations to the public. The principles of the common law, and their charters accepted by them, and which clothe them with a portion of the sovereignty of the State, impose duties upon them to the public, which

they must discharge.   They can be compelled, by the mandates of the courts, to a full performance of them ; and parties seeking redress need not resort to the imperfect action at common law, but may apply for the more effectual remedy by *mandamus*.

Railways are improved public highways; and the courts have uniformly held that they are of such public use as to justify the exercise of the right of eminent domain, in taking all real estate that may be necessary for the construction and maintenance of the road, its depots, side tracks, stations, machine shops, and other necessary appendages, disfiguring and rendering unfit for cultivation farms, and even in destroying dwellings.

The necessity and expediency for the exercise of this right, in making public improvements, either for the benefit of all the people of the State, or of a particular municipality, must be determined by the legislature.

Mere convenience is not sufficient to justify the exercise of the right.   The public use must be necessary and pressing. In referring to the urgency of the public use, Woodbury, J., in the case of *West River Bridge Co.* v. *Dix*, 6 How. 546, said : " So as to a road, if really demanded in particular forms and places, to accommodate a growing and changing commu nity, and to keep up with the wants and improvements of the age—such as its pressing demands for easier and social intercourse—quicker political communication, or better internal trade—and advancing with the public necessities from blazed trees to bridle paths, and thence to wheel-roads, turnpikes, and railroads."

Though the distinction between the right of eminent domain and the power of taxation may be manifest, yet, when the public use, necessary for the exercise of the former, has been settled by both the legislative and judicial departments, and a particular enterprize has thus been fixed as of public importance, the position is very much strengthened, that taxation for such an enterprize is for a public purpose.

This court has decided that such corporations are created

for the public good; to increase the facilities and conveniencies, and promote the great ends of commerce; and that they can not organize monopolies, and make contracts injurious to the public interests. *Vincent* v. *C. & A. R. R. Co.,* 49 Ill. 33; *Chi. & N. W. R. R. Co.* v. *The People ex rel. Hempstead,* 56 id. 365.

In view of the past history of railroads, the impossibility of dispensing with them, the necessity of an increase of the number to open new outlets for the products of our fertile and inexhaustible soil—all of which were well known to the legislature—and sustained by numerous authorities—we must hold, that, even if the appropriation in this case was not for a public purpose in the broadest sense, the character of the purpose is involved in such doubt that we can not declare void the action of the legislature.

Is the law, under consideration, in violation of the fifth section of the ninth article of the constitution of 1848? That section provides that "The corporate authorities of counties, townships, school-districts, cities, towns, and villages, may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same."

It is contended that the appropriation was not for a "corporate purpose." If it was for a public purpose—for the benefit of the inhabitants of the municipality—then it would be for a corporate purpose. The latter can not be distinguished from the former; and all that we have said in relation to the public purpose of the tax, will apply with equal force to a corporate purpose. We refer to the following cases, in which the questions discussed have been settled by this court. *Prettyman* v. *The Supervisors of Tazewell County,* 19 Ill. 406; *Johnson* v. *The County of Stark, supra; Perkins* v. *Lewis,* 24 Ill. 208; *Butler* v. *Dunham,* 27 Ill. 474; *The President and Trustees* v. *Frick,* 34 Ill. 405.

In the case of *Nichol* v. *The Mayor and Aldermen, supra,* a subscription by the city of Nashville to a railroad was held

to be for a corporate purpose. The constitution of Tennessee provides that "The general assembly shall have power to authorize the several counties and incorporated towns in this State to impose taxes for county and corporation purposes respectively." The language is substantially the same as in our constitution. The city of Nashville having subscribed, a bill was filed to restrain the issue of bonds; and the court decided that the legislature had power to authorize the subscription; that the construction of the road was a corporate purpose; and that the city might either levy the tax or issue bonds to obtain the money.

In *Taylor* v. *Thompson*, 42 Ill. 9, this court defined a corporate purpose to mean: "A tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it."

We accept this definition, and are of opinion that no person can doubt but that taxes, expended to aid in the construction of a railroad, must promote the general prosperity.

The remaining question is, whether a distinction exists between a donation in aid of the road, and a subscription to the capital stock of the corporation? The distinction is more apparent than real; indeed, to our view, is entirely shadowy

No principle would justify the authority to a municipal corporation to become a stockholder in a railroad company, merely to acquire equitable rights, and to prevent the misapplication of the funds.

The power is granted in consideration of the public benefits, and these are as great in the one case as in the other.

The decree of the court below is reversed and the cause remanded.

*Decree reversed.*