HACKETT (CLARK v.). See Case No. 2,823.
HACKETT (LETTS v.). See Case No. 8,283.

## Case No. 5,889.

### HACKETT v. OTTAWA.

[7 Reporter, 8; [1] 11 Chi. Leg. News, 82.]

Circuit Court, N. D. Illinois. 1878.[2]

#### MUNICIPAL BONDS—VALIDITY—NOTICE.

Where municipal bonds are issued without authority of the legislature in aid of a quasi public enterprise, and the recitals on the face of the bonds are sufficient to put a purchaser on inquiry, and inform him of the purpose for which they were issued, such bonds are invalid in the hands of a bonâ fide purchaser for value [See note at end of case.]

[3][The declaration in this case charges that on the second day of August, 1869, the defendant, the city of Ottawa, a municipal corporation of this state, made and delivered to one W. H. W. Cushman, its one hundred and twenty (120) bonds or written obligations, for the sum of five hundred (500) dollars each, bearing date on said second day of August, 1869; one-third of which bonds were due in five (5) years, one-third in ten (10) years, and one-third in fifteen (15) years from date, with interest at the rate of ten per cent. (10 per cent.) per annum, payable annually according to the tenor of certain coupons annexed to each of said bonds; the said coupons being for the sum of fifty dollars each. The bonds it is averred were alike in tenor and amount, except as to time of payment; and one of them is set out at length in the declaration, from which it appears that each of said bonds contained a recital in the following words: "This is one of one hundred and twenty bonds of like amount and even date, herewith, numbered one to one hundred and twenty, respectively, issued by the city of Ottawa, by virtue of the charter of said city, wherein it is provided that the city council shall have power to bor-

row money on the credit of the city, and to issue bonds therefor, and pledge the revenue of the city for the payment thereof; provided, that no sum or sums of money shall be borrowed at a greater interest than at ten per cent. per annum. Art. V. Sec. 3d." "No money shall be borrowed by the city council until the ordinance passed therefor shall be submitted to, and voted for, by a majority of the voters of said city attending an election for that purpose. Art. X. Sec. 20; and also in accordance with a certain ordinance passed by the city council of said city on the 15th day of June, 1869, entitled 'An ordinance to provide for a loan for municipal purposes;' which ordinance was ratified by a majority of all the qualified voters of said city, at an election holden on the 20th day of July, 1869; and in conformity with an ordinance passed by the city council of said city on the 30th day of July, 1869, entitled 'An ordinance to carry into effect the ordinance of June 15th, 1869,' entitled, 'An ordinance to provide for a loan for municipal purposes.' "

[The plaintiff avers that, after the issue of said bonds, to wit: on the first day of August, 1870, he became the purchaser, for a valuable consideration, paid by him, of twenty of said bonds, being from No. 41 to No. 61, inclusive, which he bought in the usual course of business, and without notice of any defense thereto; and that he also became at said time, the purchaser and owner of eighty of the interest coupons attached to said bonds so purchased by him, to wit: twenty coupons maturing and payable August 2d, 1874; twenty coupons maturing and payable August 2d, 1875; twenty coupons maturing and payable August 2d, 1876; and twenty coupons maturing and payable August 2d, 1877; and that he is now the holder and bearer thereof, whereby said defendant became liable to pay to said plaintiff the amount due on said several coupons, according to the tenor and effect thereof, and being so liable, said defendant undertook and promised to pay the same, yet has failed to make such payment.

[Defendant has plead to the declaration: 1st. The general issue. 2d. A special plea setting forth that the ordinance referred to in the body of said bonds, and alleged to have been passed by the common council of said city, on the 15th day of June, 1869, entitled "An ordinance to provide for a loan of money for municipal purposes," was in the words and figures following:

["Be it ordained by the city council of Ottawa, that the mayor of the city be, and he is hereby authorized to borrow in the name of the city, at a rate of interest not exceeding ten per cent., the sum of sixty thousand dollars, for the use of said city, to be expended in developing the natural advantages of the city for manufacturing purposes; and that bonds of the city be issued therefor, in sums of five hundred dollars

---

[1] [Reprinted from 7 Reporter, 8, by permission.]

[2] [Reversed in 99 U. S. 86.]

[3] [From 11 Chi. Leg. News, 82.]

each, with interest payable annually. Said bonds to be payable, one-third in five years, one-third in ten years, and one-third in fifteen years after the date thereof. Provided, that no application shall be made of the proceeds of said bonds, except for the purpose aforesaid, and in pursuance of an ordinance to be passed for that purpose, by the city council, nor until the faithful application of the proceeds of such bonds to the purpose aforesaid, shall be fully secured to the city."

[The ordinance also contained further provisions in regard to the mode in which it should be submitted to a vote of the voters of the city, which it is not necessary to recite at length. The plea also avers that the ordinance referred to in said bonds, purporting to have been passed by said city council, on the 30th day of July, 1869, entitled "An ordinance to carry into effect the ordinance of June 15, 1869, entitled 'An ordinance to provide for a loan for municipal purposes,'" was in the following words:

["Whereas, by an ordinance passed by the city council on the 15th day of June, 1869, it was provided that the mayor of the city should be authorized to borrow, in the name of the city, sixty thousand dollars, to be expended in developing the natural advantages of the city for manufacturing purposes, and to issue the bonds of the city therefor; and whereas, it was provided by said ordinance that the same should be submitted to the voters of the city, to be voted for or against at an election to be holden for that purpose, on the 20th day of July, 1869; and whereas, at said election the said ordinance was ratified by the voters of the city, by a majority of 823 votes, being a majority of the legal voters of the city. Now, therefore, be it ordained by the city council of the city of Ottawa, that the bonds of the city, for the sum of sixty thousand dollars, be issued by the mayor, in accordance with the terms and conditions of said ordinance of June 15, 1869, and that he deliver the same to William H. W. Cushman, to be used by him in developing the natural resources of the surroundings of the city, and that the said Cushman is authorized and directed to expend the same in the improvement of the water power upon the Illinois and Fox rivers, within the city, and in the immediate vicinity thereof, under the franchises and powers which have been granted for that purpose by the legislature of the state, or which may hereafter be granted for that purpose, in the manner which, in his judgment, shall best secure the practical and permanent use of said water power in the city and its immediate vicinity, provided that said Cushman shall execute and deliver to the mayor an agreement from him to the city of Ottawa, that he will, without unreasonable or unnecessary delay, cause a good, substantial and sufficient dam to be constructed across the Illinois river, above the city, to bring into use all the available water power of said river at Ottawa, and will construct sufficient head and tail races to make such water power available, said races to be constructed and continued to the Fox river, below the aqueduct and above the island in Fox river, as fast as the same may be required for actual use, and as fast as water power can be leased at fair and reasonable rates, and be brought into actual operation, and that he will also erect a good, substantial and sufficient dam across Fox river, so as to make available the water power of both rivers, at Ottawa, as soon as the additional water power created by such dam across Fox river can be brought into actual use by being leased at reasonable and fair rates, so as to have all the available water power of both rivers at Ottawa, ready for use as rapidly as called for. And provided, also, that said Cushman shall bind himself, that if said work is not constructed as aforesaid, that he will return said bonds to the city, or the value of the same, and save it harmless from all loss on account of the same, or on account of interest accruing thereon; and in case said work shall not be completed by said Cushman, then to return a pro rata share of said bonds in the proportion that the cost of the work constructed shall bear to the part of the work not constructed, provided that at least one of the dams above mentioned with the races necessary to make the water power thereby created available for practical use, shall be completed, or the whole of said bonds shall be returned to the city by said Cushman. The intent of this ordinance being to secure the improvement and development of said water power in this city by appropriating the loan obtained under the ordinance aforesaid for that purpose, or pro rata, so far as said water power shall be made available for practical use."

[The plea also avers that the "franchises and powers," referred to in the ordinance of July 30, 1869, were certain powers and franchises granted by the legislature of this state to said W. H. W. Cushman and his associates, by an act approved Feb'y 15, 1851, entitled, "An act to incorporate the Ottawa Manufacturing Company," and that on the 16th day of Feb'y, 1865, an act was passed amending said act, by all which legislation said Ottawa Manufacturing Company was made a private corporation, with power to build and maintain dams across the Illinois and Fox rivers, and to lease the water power so created. The plea then avers that the matters set forth in said ordinances show the only object and purpose for which said city had no authority to issue bonds for said purpose. The second special plea sets up the same matter, and avers that Cushman has not constructed certain dams, nor made available the water power of said rivers at Ottawa, and that he hath not performed any of the covenants mentioned in said ordinances, of all which plain-

tiff had notice. To these special pleas plaintiff has demurrer.] [4]

BLODGETT, District Judge, (after stating the facts). The only question raised by the demurrer is, whether the city had power to issue the bonds in question, and whether sufficient appears upon the face of the bonds to put the plaintiff upon notice of the purpose for which the bonds were issued. It is conceded that no special authority was ever given by the legislature to the city to make this donation to Cushman or the Ottawa Manufacturing Company. The manufacturing company was a purely private corporation, with no public duties or obligations imposed upon it by its charter or any general law. The power given the city council, by the charter, to "borrow money on the credit of the city and issue bonds therefor," is given in connection with the general grant of powers to the city council, and must, undoubtedly, be construed as a grant to borrow money, and issue bonds only for the purpose of carrying out some of the purposes for which the city corporation is created. Article 9. of the constitution of 1848. in force at the time these bonds were issued, clothed municipal corporations with power to levy and collect taxes for corporate purposes. The courts of this state have gone to their extreme tether in sustaining issues of municipal bonds for corporate purposes, when special authority has been delegated by the legislature, to the corporation, to aid or foster such purpose. Of this class are the donations and subscriptions authorized to be made by municipalities, to aid in the construction of railroads. bridges, etc., and, more notably, a class of bonds which were issued by towns, cities, and counties, to pay bounties to persons who should enlist in the army during the late war, of which Taylor v. Thompson, 42 Ill. 9, is a leading case. Rogers v. Burlington, 3 Wall. [70 U. S.] 655; and Mitchell v. Same, 4 Wall. [71 U. S.] 270, are to the same effect. But in all these cases there was found by the court to be an express legislative authority for the corporation to do what it had assumed to do; the principle running through all the cases where these bonds have been sustained being that the legislature had made the object for which the debt was created a "corporate purpose," within the meaning of the constitution; but I find no case going so far as to uphold an issue of bonds by a municipality in aid of even a quasi public enterprise in the hands of a corporation or individuals, unless there was an express or necessarily implied delegation of authority to issue such bonds, or levy a tax. The charter of the defendant city clothes its common council with various powers and duties, such as maintaining and improving

streets and alleys, building school-houses and maintaining schools, to provide for lighting the streets of the city, to establish hospitals, and adopt sanitary measures, adopt a system of sewerage, to sustain a police, etc. These are all corporate purposes. That is, the corporation was created to accomplish these purposes, and I do not intend to be understood as saying that the legislature might not have delegated to this city council the right to make a donation to Mr. Cushman or the manufacturing company, in its enterprise of developing the water-power of the Fox and Illinois rivers, because that question is not now before me. But it is admitted that no such express delegation of power was made; I am, therefore, of opinion that there was no power in the city council to issue the bonds. It is contended, however, that inasmuch as the city council is empowered "to borrow money on the credit of the city and issue bonds therefor," these bonds are therefore valid in the hands of a bonâ fide holder who has purchased them for value on the market. This position might be correct if the recitals on the face of the bonds did not fully inform any purchaser of the object for which the bonds were issued. The bonds on their face state that they are issued in pursuance of the clauses in the charter authorizing the city to borrow money and issue bonds,. and of two ordinances described by title and date. These ordinances state specifically the object to which the bonds were to be applied, and put the purchaser upon inquiry as to whether such was a corporate purpose or not. If the corporation is bound by the recitals in its bond, certainly the purchaser is also; and this plaintiff, in my opinion, had ample notice that these bonds were not issued to carry out any of the express or implied powers granted to this corporation. Demurrer overruled.

[NOTE. On appeal to the supreme court the judgment was reversed. and the demurrer sustained, in an opinion by Mr. Justice Harlan, who said that money borrowed by the city, and expended in developing its natural resources for manufacturing purposes, seemed to be within the provision of the constitution permitting the borrowing of money "to promote the general prosperity and welfare of the municipality." Where bonds are duly issued under the corporate seal of the city and state, that the ordinances under which they were issued were ones "providing for a loan for municipal purposes," the city is estopped, as against a bonâ fide holder for value, to say that the ordinances appropriated the money to other purposes, and the bonds were therefore void. 99 U. S. 86.]