COUNTY OF LIVINGSTON *v.* DARLINGTON.

The act of the General Assembly of Illinois, approved March 5, 1867, establishing the State Reform School, examined. The provision, authorizing municipal corporations to donate money to secure the location of the school within their limits, sustained as not being in conflict with the constitution of the State, adopted in 1848, there being no settled or uniform decision to the contrary by her Supreme Court.

ERROR to the Circuit Court of the United States for the Northern District of Illinois.

The facts are stated in the opinion of the court.

*Mr. Richard T. Merrick* and *Mr. Robert G. Ingersoll* for the plaintiff in error.

*Mr. Wayne MacVeagh, contra.*

MR. JUSTICE HARLAN delivered the opinion of the court.

The court is asked in this action to declare an act of the General Assembly of Illinois to be repugnant to the Constitution of that State. The act referred to was approved March 5, 1867. It established a State Reform School for the discipline, education, employment, and reformation of juvenile offenders and vagrants, between the ages of eight and eighteen years. The management of the institution was committed to a board of trustees, appointed by the Governor by and with the consent of the Senate. Cook County was excepted from the operations of the act, because a similar institution had been previously established in that county.

The board, upon its organization, was required to proceed in the selection of a suitable site, in or near the central portion of the State, on which the necessary buildings should be erected. In determining such location, the trustees were directed to take into consideration any proposition, of the performance of which they had satisfactory assurance, to give to the State the lands necessary for the site of the "house of refuge," or any materials or money to aid in the erection thereof. Any bond or other obligation executed to the people of the State, and delivered to the trustees of the institution, to secure any such site, money, or materials, the act declared, should be binding upon the parties executing the same. 1 Gross Stat. 564.

On the 19th of April, 1869, — the institution not then having been permanently located, — an amendatory act was passed, which, among other things, declared, —

That any township, county, town, or city might make a subscription in aid of the school, in money, bonds, or lands, for the purpose of securing its location within its limits;

That such subscription, if by a county, should be made by resolution, to be adopted by a majority vote of its Board of Supervisors, at a regular or special meeting thereof; if by a township, by resolution of the supervisor, town clerk, and assessor, acting as a board for the township; if by a town, by resolution or ordinance of its board of trustees; and if by a city, by a resolution or ordinance passed in the usual manner.

That no subscription should be made by a township, town, or city, except in pursuance of a popular vote, at an election called and held in the manner specified in the act; and,

That the township, county, town, or city making such subscription might provide for the payment of the principal and interest thereof, by tax upon the taxable property of such county, township, town, or city, to be levied and collected as other taxes. Id. et seq.

Under this legislation the county of Livingston, through its Board of Supervisors, in consideration of the location of the school within its limits, and to aid in the erection of the necessary buildings, donated the sum of $50,000, and, in payment thereof, issued county bonds, with interest coupons attached. The bonds, dated July 15, 1869, signed by the chairman and

clerk of the Board of Supervisors, under the county seal, and reciting upon their face that they were executed and issued under the provisions of the acts of March 5, 1867, and April 19, 1869, and in accordance with the resolution of the Board of Supervisors, were delivered to the trustees of the school, who caused them to be sent to Pennsylvania for sale. They were there sold, in open market, to citizens of that State, and the proceeds applied, by the State of Illinois, to the completion of the buildings connected with the Reform School.

The institution went into operation as contemplated by the legislature.

The present action was brought by Darlington upon some of the interest coupons, he, it is agreed, having become the legal holder thereof, in good faith, for a valuable consideration.

The Circuit Court gave judgment against the county.

Upon this writ of error the controlling question presented for our determination is whether the acts of the General Assembly of Illinois, under which the bonds were issued, are, as to the provisions authorizing municipal donations to secure the location of the Reform School, repugnant to the fifth section of article nine of the Constitution of the State, ratified in 1848.

That section declares that " The corporate authorities of counties, townships, school districts, cities, towns, and villages may be vested with power to assess and collect taxes for corporate purposes; such taxes to be uniform in respect to persons and property within the jurisdiction of the body imposing the same. And the General Assembly shall require that all the property within the limits of municipal corporations, belonging to individuals, shall be taxed for the payment of debts contracted under authority of law."

The argument of counsel in behalf of the county consists mainly of two propositions, viz: —

That according to the settled construction by the Supreme Court of Illinois of the State Constitution, at the time the bonds in suit were issued, the General Assembly could not invest the corporate authorities of counties or other municipal organizations with power to assess and collect taxes for any except corporate purposes;

That it is equally well settled by the same court not to be a corporate purpose for a county or other municipal body to aid, by donation or otherwise, in the establishment of a State institution for the discipline, education, employment, or reformation of juvenile offenders and vagrants.

In determining whether the General Assembly of Illinois has transgressed the fundamental law of that State, we recall what this court said in *Fletcher* v. *Peck* (6 Cranch, 128), where it became our duty to consider whether a statute of Georgia was in conflict with its Constitution.

"The question," said Mr. Chief Justice Marshall, "whether a law be void for its repugnancy to the Constitution is, at all times, a question of much delicacy, which ought seldom, if ever, to be decided in the affirmative in a doubtful case. The court, when impelled by duty to render such a judgment, would be unworthy of its station, could it be unmindful of the solemn obligations which that station imposes. But it is not on slight implication and vague conjecture that the legislature is to be pronounced to have transcended its powers and its acts to be considered as void. The opposition between the Constitution and the law should be such that the judge feels a clear and strong conviction of their incompatibility with each other."

This language was cited with approval in *Chicago, Danville, & Vincennes Railroad Co.* v. *Smith* (62 Ill. 268), where the Supreme Court of Illinois added:—

"Enough has been cited to show the firm position of the judiciary, that the courts ought not, and in justice to the rights of a co-ordinate department of the State government cannot, declare a law to be void without a strong and earnest conviction, divested of all reasonable doubt, of its invalidity." *Lane* v. *Dorman*, 4 Ill. 238; *People* v. *Marshall*, 6 id. 672.

Adhering to these doctrines as vital in the relations which exist between the legislative departments of the several States and the courts of the Union, we first inquire as to the state of the law in Illinois, as declared by its highest judicial tribunal, at the time (July 15, 1869) the bonds in suit were issued and put upon the market for sale.

Prior to that date it seems to have been settled by that court,—

1. In *Harvard, &c.* v. *St. Clair Drain Co.* (51 Ill. 130), that under the Constitution in force prior to that of 1848, and which contained no provision similar to sect. 5, art. 9, of the Constitution of 1848, the right of the legislature to confer upon municipal corporations the power of taxation for local or corporate purposes was constantly exercised and never denied or doubted; that sect. 5, art. 9, of the Constitution of 1848, was not, therefore, intended as a grant of such power or to remove doubts as to its existence, but to define the class of persons to whom the right of taxation might be granted and the purposes for which it might be exercised; that, consequently, the legislature could not constitutionally confer that power upon any other than the corporate authorities of a county, township, school districts, cities, towns, and villages, or for any other than corporate purposes;

2. In *Johnson* v. *County of Stark* (24 id. 75), re-affirmed in *Chicago, Danville, & Vincennes Railroad Co.* v. *Smith, supra;* *Perkins* v. *Lewis*, 24 Ill. 208; *Butler* v. *Dunham*, 27 id. 473; *Town of Keithsburg* v. *Frick*, 34 id. 405, and other cases, that the subscription by a county to the capital stock of a railroad company engaged in the construction of a road running through the limits was a corporate purpose, for the accomplishment of which the corporate authorities of the county could, under legislative sanction, assess and collect taxes upon persons and property within its jurisdiction; that such aid was a corporate purpose, because in the completion of such improvements " the whole community is either immediately or remotely interested, those near the line on which it passes in a larger, and those more remotely situated in a less degree, but all participate in its benefits;" that among the corporate purposes for which a county may be taxed are court-houses, jails, poor-houses, the opening and keeping of common highways, and the erection and maintenance of bridges.

3. In *Taylor* v. *Thompson* (42 Ill. 9), followed by *Henderson* v. *Lagow* (42 id. 361), *Briscoe* v. *Allison* (43 id. 291), *Misner* v. *Bullard* (43 id. 470), and *Johnson* v. *Campbell* (49 id. 317), that a tax levied by a township under legislative authority, and in pursuance of a popular vote, to pay bounties to persons who should thereafter enlist or be drafted in the army

of the United States, was a tax for a corporate purpose ; that the framers of the Constitution intended to leave a large discretion to the legislature as to what should be considered as falling within that phrase ; that the phrase " corporate purposes " should not receive " so narrow a construction as to justify the courts in holding that a municipality should not tax itself, although authorized by act of the legislature, because it might be a *debatable* question whether the proposed tax would promote the corporate welfare or not ; " that a tax for a corporate purpose is a " tax to be expended in a manner which shall promote the general prosperity and welfare of the community which levies it ; that every individual tax-payer shall have a direct interest in the object for which the tax is levied, or be directly benefited by the expenditure, is unattainable in the very nature of things.  General results are all that can be expected ; and if it appears that a tax has been voted and levied with an honest purpose to promote the general well-being of the municipality, and was not designed merely for the benefit of individuals or a class, its collection should not be stayed by the courts."

In *Taylor* v. *Thompson* (*supra*) the court, by way of illustrating the doctrine there laid down, said : " The creation of a police force, *the establishment of a reform school for juvenile offenders*, or a hospital for persons ill with contagious disease, would not directly benefit a non-resident taxed for their support ; and yet no person would deny that these are proper ends of municipal taxation, and justly included in the phrase ' corporate purposes.' "

This analysis of the decisions of the Supreme Court of Illinois sufficiently indicates what was, at the time these bonds were issued, the established authoritative exposition of the phrase " corporate purposes."  It is to be observed that when these bonds, by the joint action of the county and State authorities, were transmitted to the State of Pennsylvania for sale to its citizens, there was in the published decisions of the State court the broad declaration that " the establishment of a reform school for juvenile offenders " was beyond question a proper object of municipal taxation, and was a corporate purpose within the meaning of the constitution.

It is necessary that we should now trace the course of decisions subsequently rendered by that court.

In *Chicago, Danville, & Vincennes Railroad Co.* v. *Smith,* already cited, it was ruled that a township *donation,* made under legislative authority, and with the sanction of a popular vote, was a corporate purpose for which a tax could be assessed by the proper authorities of such township. The court there said: " It is contended that the appropriation was not for a corporate purpose. If it was for a *public* purpose — for the benefit of the inhabitants of the municipality — *then it would be for a corporate purpose.* The latter cannot be distinguished from the former; and all that we have said in relation to the public purpose of the tax will apply with equal force to a corporate purpose. . . . In *Taylor* v. *Thompson* (42 Ill. 9) this court defined a corporate purpose to mean ' a tax to be expended in a manner which shall promote the general prosperity and welfare of the municipality which levies it.' We accept this definition," &c.   74 Ill. 277 ; *Town of Middleport* v. *Ætna Life Insurance Co.,* 82 id. 562 ; *Lippincott* v. *Town of Pana,* decided October, 1879.

We come now to a case which, with entire respect for the very able and enlightened tribunal by which it was determined, we are constrained to say does not seem to be in line with its previous decisions, or with subsequent decisions to which we shall presently refer. We allude to *Livingston County* v. *Weide* (64 Ill. 427), decided more than three years after the bonds and coupons in suit were issued under legislative authority, and their proceeds received and used by the State. That was a suit in chancery, commenced in the State court by the board of supervisors of Livingston County against the county treasurer, to enjoin the latter from paying out money which had been collected to meet the interest upon the identical bonds whose validity is here questioned. None of the holders of the bonds were made parties to the suit. No attempt was made to bring them before the court in any form. It is not, therefore binding upon them as a final adjudication of the questions now before us. *Brooklyn* v. *Insurance Company,* 99 U. S. 362 ; *Pennoyer* v. *Neff,* 95 id. 714 ; *Empire* v. *Darlington, supra,* p. 87.

It was held in *Livingston County* v. *Weide* not to be a corporate purpose, in the constitutional sense, to provide a location for a State institution. After stating it to be the duty of the legislature to determine for the whole people the necessity for a State reform school, and that it was degrading to the State, and reflected no honor upon it to accept a donation from a particular locality to secure the location of a State institution, the court proceeds: " What peculiar interest have the tax-payers of Livingston County, or non-residents owning property therein, in such an institution being located in their midst? What corporate purpose does it specially promote by such location? What is a reform school? It is a penitentiary on a small scale, as is evident from the statute cited. How can 'it be a corporate purpose to establish what all admit is a necessary evil, a State reform school, in any town? It is a State, not a corporate purpose."

Upon these grounds the bonds issued by the county were held to be null and void, by whomsoever owned. It is to be observed that the court, in that case, refers, but without disapproval, to the definition of corporate purposes as given in *Taylor* v. *Thompson*, and, recognizing the inherent difficulty of laying down any precise rule applicable to every case, says : " The true doctrine is, such purposes, and such only [are corporate purposes] as are germane to the objects of the creation of the municipality, at least such as have a legitimate connection with those objects, and a manifest relation thereto."

The binding authority of that case is disputed by defendant in error upon the ground that his rights accrued long prior to its decision, and under a settled construction of the State constitution favorable to the validity of the acts of 1867 and 1869. He further contends that the rule announced in *Livingston County* v. *Weide* was substantially abrogated, if not entirely overthrown by subsequent decisions of the same court, particularly those in *Burr* v. *City of Carbondale* (76 Ill. 455) and *Hensley Township* v. *The People*, 84 id. 544.

In *Burr* v. *City of Carbondale* the question presented was whether a tax, levied by a city under legislative authority, to pay interest on city bonds, issued to *secure* the *location*, within its limits, of a *State* institution, called the Southern Normal Uni-

versity was or not a corporate purpose within the meaning of the Constitution of 1848. The court held that it was. And if we do not misapprehend altogether the grounds upon which the decision rests, they were : 1. That the university was, in the judgment of the court, an actual benefit to the community in which it was located. 2. That the bonds were issued after a vote of the people who were to be taxed for their payment. That case was distinguished from *Livingston County* v. *Weide* in these respects : that a State reform school was, in the judgment of the court, an undoubted injury, not an advantage, to the community in which- it was located, and, therefore, to aid it by municipal taxation was not a corporate purpose ; and, further, that the bonds, in that case, were issued without a vote of the people.

As to the objection that the bonds, under the State Reform School act, were issued without taking the sense of the people, it is sufficient to say that the board of supervisors were the corporate authorities of the county, and that the Supreme Court of Illinois had decided, under the constitution of 1848, as early as *Town of Keithsburg* v. *Frick* (34 Ill. 405), and again in *Marshall* v. *Silliman* (61 id. 218), and, finally, in 1870, in *Quincy, Missouri, and Pacific Railroad Co.* v. *Morris* (84 id. 411), that it was " by no means a necessary element in these [municipal] subscriptions that there should be a vote of the inhabitants of a town or city authorizing them. It is competent for the legislature to bestow the power directly" upon those who, in legal contemplation, were the corporate authorities of the municipality. *Roberts* v. *Bolles, supra*, 119.

In *Hensley Township* v. *The People, supra*, it was held, upon the authority of *Burr* v. *City of Carbondale*, that a county tax levied in payment of bonds issued, under legislative authority, to *secure* the *location*, within that county, of a *State* Industrial university, was a tax for a corporate purpose.

Upon this review of the decisions of the Supreme Court of Illinois our conclusion is that, testing the validity of these bonds by the decisions of that tribunal, rendered prior to and unmodified at the date of their issue, we would be obliged to hold they were issued for a corporate purpose. And, while the doctrines announced in *Livingston County* v. *Weide*, if

applied here, would establish their invalidity, the principles enunciated in previous cases, and in the subsequent cases of *Burr·* v. *City of Carbondale* and *Hensley Township* v. *The People* seem quite as clearly to sustain their validity. If, as adjudged by the Supreme Court of Illinois, it was, within the true meaning of the·Constitution of 1848, a corporate purpose to impose taxes to pay bounties to those who enlisted or were drafted in the army of the United States, or to secure the location of a State Normal or State Industrial University, or to pay municipal bonds issued, by way of donation, to aid in the construction of a railroad — if taxation, in the constitutional sense, was for a corporate purpose whenever imposed for a public purpose — we do not perceive upon what just ground it can be held not to be a corporate purpose for a municipality to make, under express legislative authority, a donation to secure the location within its· limits of a State reform school, wherein juvenile offenders and vagrants may receive such .care, discipline, education, and employment as, while effecting or contributing to their reformation, will protect the community in which they live from the evils and dangers which confessedly result from idleness and vagrancy among the young.

Had the acts under which these bonds were issued provided for the establishment of a reform school in Livingston County, for the discipline, education, employment, and reformation of juvenile offenders and vagrants within its limits, it would not be claimed, in view of the course of decisions in the State court, that the legislature has transcended its constitutional power.   That the school established was a State institution, to be maintained after being established at the expense of the State, but in the benefits of which the county where it was located could participate, does not, it seems to us, affect the question of legislative power.   It is a matter rather of public policy or expediency, the determination of which, the power existing, belongs to the legislative department.   It was well said by the Supreme Court of Illinois, that " in the enactment of laws the legislature must exercise its judgment and discretion.   As to questions of pure policy and expediency, no express or necessarily implied constitutional provision intervening, it is the sole judge.   It has also the undoubted right to take a com-

prehensive view in determining the necessity of a law, and the character of the purpose to be accomplished by it.  A court, with any propriety, cannot arrogate to itself all power and wisdom in such matters; and if there be grave doubt as to the nature of the purpose, the doubt must always be solved in favor of the action of the legislature."   62 Ill. 273.   In a previous case the court had said that " a proper respect for the legislative department requires us to regard its acts as *prima facie* constitutional."   42 Ill. 14.

We express no opinion as to what, in our judgment, is the true exposition of those parts of the Illinois Constitution to which reference has been made, or as to the wisdom or propriety of such legislation as that under examination.

Our purpose has been to ascertain what was the law of the State as expounded by its highest judicial tribunal.   And while, perhaps, the judgment of the Circuit Court might, in view of our own decisions, be sustained upon other grounds, it is sufficient for the disposition of this case to say, that the adjudications of the State court do not show any such settled or uniform construction of the State Constitution upon the questions here involved as would justify us, with proper respect to the legislative department of Illinois, in holding that it had transgressed her fundamental law.

*Judgment affirmed.*