## SAMUEL C. LONG v. CHARLES C. CULP.

1. TAXING HOMESTEAD LANDS, *before Patented*. Lands taken under the homestead act are not liable to taxation until the right to a patent exists. And *quære:* Are they liable until the issue of the patent?

2. PATENT — *When Due.* No right to a patent under the Homestead Act exists until after five years of continuous possession.

3. LANDS — *When Subject to Taxation.* Lands must be subject to taxation on the 1st of March, or they are not taxable for that year.

4. STATUTES; *Construction.* Where one section of a statute treats solely and specially of a matter, it will prevail as to that matter over other sections in which only incidental reference is made thereto.

*Error from Saline District Court.*

ACTION by *Long*, to quiet title to certain lands acquired by him under the Homestead Act, the patent for which was issued March 12th 1872. *Culp* answered, admitting that he had and claimed an interest in the lands in controversy, and alleging that said lands were subject to taxation in 1871, were duly assessed, that the taxes levied thereon were not paid, and that said lands were duly sold for said unpaid taxes, and that he was the owner and holder of the tax-sale certificate

issued under such sale.  Reply, denying the taxability of the
lands.  The action was tried at the May Term 1874.  The
district court held that the lands were subject to taxation in
1871, and gave judgment in favor of the defendant.  *Long*
brings the case here on error.  No briefs.

*D. R. Wagstaff*, for plaintiff.

*E. W. Hodgkinson*, for defendant.

The opinion of the court was delivered by

BREWER, J.: The question in this case is, whether a cer-
tain tract of land was subject to taxation for the year 1871.
The facts as agreed are as follows: Title to the land was ob-
tained under the homestead act; (12 U. S. Stat. at Large, 393.)
On the 1st of March 1871 title was still in the government.
On the 12th of June 1871 the owner made final proof and
entry, and on the 12th of March 1872 the patent issued.
The land was not returned by the assessor, but was placed
upon the tax-roll by the county clerk under the provisions
of § 36 of the tax law, (Gen. Stat., p. 1033,) as amended in
1870; (Laws of 1870, p. 245, § 1.)

The first of March is the time at which the taxability of
property is determined.  This is true, as a general rule, of
both personal and real property: Gen. Stat., p. 1023, § 8;
p. 1024, § 11; p. 1027, § 19; p. 1029, §§ 25 and 27; p. 1032,
§ 35.  The last section provides that "lands entered on or
before the first day of March in each year shall be subject to
taxation for that year."  Was this land subject to taxation
on the 1st of March 1871?  Clearly not.  The title still re-
mained in the government.  Nor does it appear that a right
to a patent then existed.  Under the second section of the
Homestead Act five years continuous possession is essential
to secure the right of final entry.  If possession ceases be-
fore the lapse of the five years, all rights under the act fail,
and the title remains with the government.  No such pos-
session is here shown, and final proof was not made till the
June following.  There was therefore then no patent, and

no right to a patent. It was government land, and therefore free from taxation. It is unnecessary to consider what difference it would make if the final proof had been made prior to March 1st. It is insisted that § 4 of the Homestead Act would have prevented taxation until after the issue of the patent. It will be time enough to determine that question when it is fairly before us. For while it is contended that under § 36 of the Tax Law as amended in 1870, (Laws of 1870, p. 245, § 1,) lands entered between the 1st of March and 1st of July are taxable for that year, (which would bring the question above noticed before us,) we are of the opinion that such claim cannot be sustained. That section, or at least the portion applicable here, reads thus:

"It shall be the duty of the county commissioners to direct the county clerk to procure from the land officers of the proper district or districts an abstract or abstracts of all lands entered subsequently to the first day of July of the previous year, and all such lands as shown by said abstract not appearing on the tax-roll, shall be entered upon said roll by the county clerk as soon as the abstract shall be received."

So far as this portion of the section is concerned the amendment makes no change, and the law was the same in 1868 as in 1870. We do not think this changes as to these lands the taxable point from the first of March. There is nothing to indicate positively up to what time the abstract is to extend. The roll is to be returned to the clerk on the 20th of June. Should the abstract be made up to that day? It dates from the 1st of July. Shall it run to the same date? Shall it run only to the 1st of March, the time otherwise fixed to determine the question of taxability? Shall it run up to the time it may be transmitted to the county clerk, whatever that time may be? These are questions unanswered by the statute. It would seem if the legislature intended to change by this section the time of taxability, the time of the termination of the abstract should have been clearly given. It is a rule of construction to seek to give effect to each expression of the legislative purpose, and to harmonize if possible any seemingly antagonistic expressions. It is also a rule of construc-

tion that when one section of a statute treats specially and solely of a matter, that section prevails in reference to that matter over other sections in which only incidental reference is made thereto.   Not because one section has more force as a legislative enactment than another, but because the legislative mind having been, in the one section, directed to this matter must be presumed to have there expressed its intention thereon rather than in other sections where its attention was turned to other things. *Griffith v. Carter*, 8 Kas., 565.   Now in the one section the sole matter is, the time at which lands shall become taxable; in the other, the addition to the tax-roll of lands overlooked by the assessor.   Of course therefore, the former should control the latter in this matter of the time of taxability.   This would be true if the time to which the abstract was to be made up, was definitely stated.   Much more so when it is left so uncertain and indefinite.   Effect also is thus given to both sections.   By the first, the time of taxability is definitely fixed.   By the second, one means is provided of ascertaining additions to the taxable lands of the prior year.   It is true, a fuller list of additions would be obtained if the abstract extended to the first of March of such year; but the legislature may have thought that by this abstract the county clerk would reach all the lands that the assessor had overlooked.   At any rate, if each abstract was extended from July 1st to July 1st, the county clerk would be in a position to ascertain the total additions.   However that may be, we are clear in our opinion that the 1st of March remains unchanged as the time to which the taxability of lands must be referred.

The district court erred in its judgment; and as the case was tried upon an agreed statement, it must be remanded with instructions to enter judgment in favor of the plaintiff, decreeing the tax-sale and certificate thereon null and void.

All the Justices concurring.