[No. 1936]

THE STATE OF NEVADA, EX REL. J. P. DON-
NELLEY, CHAIRMAN OF THE REPUBLICAN COUNTY
CENTRAL COMMITTEE OF ESMERALDA COUNTY,
RELATOR, *v.* JOSEPH HAMILTON, AS COUNTY
CLERK OF ESMERALDA COUNTY, NEVADA, APPEL-
LANT.

1. ELECTIONS—PRIMARY ELECTIONS—RIGHT OF SUCCESSFUL CANDI-
DATE TO WITHDRAW HIS NAME FROM OFFICIAL BALLOT.

    The question whether a candidate nominated at a primary
    election may have his name omitted from the general election
    ballot is a matter of policy for the legislature, and, where the
    legislature forbids the withdrawal of candidates nominated at
    a primary, the court cannot allow candidates to withdraw even
    for deserving reasons.

2. STATUTES—CONSTRUCTION—LEGISLATIVE INTENT.

    The intention of the legislature controls the courts in the
    construction of statutes, and such intention must be gathered
    from the language used and from the mischiefs intended to be
    suppressed or benefits to be attained.

3. STATUTES—CONSTRUCTION—SPECIAL AND GENERAL PROVISIONS.

    One section of a statute treating specifically of a matter will
    prevail over other sections in which incidental or general refer-
    ence is made to the same matter.

4. COMMON LAW—ADOPTION.

    The common law, except as specially abrogated, or except as
    unsuitable, prevails in Nevada.

5. OFFICERS—DUTY TO PERFORM—DUTIES OF OFFICE.

    At common law a citizen could be required to perform the
    duties of an office.

6. ELECTIONS—RIGHT TO RESIGN.

    A candidate nominated at a primary election for a public
    office is not an officer within the statute allowing officers to
    resign.

7. ELECTIONS—PRIMARY ELECTIONS—RIGHT OF SUCCESSFUL CANDI-
DATES AT PRIMARY ELECTIONS TO RESIGN.

    Under the primary act (Stats. 1908-09, c. 198, sec. 5, subd. 4)
    requiring each candidate on filing his nomination papers to
    make an affidavit, that if nominated he will accept the nomina-
    tion and not withdraw, and that he will qualify as such officer,
    if nominated and elected, and section 24, providing that the
    person receiving the highest number of votes at a primary as
    the candidate for the nomination of a political party shall be
    placed on the official ballot, and section 27, providing that
    vacancies occurring after a primary shall be filled by the party
    committee, one nominated at a primary election as the can-
    didate of a political party for a public office cannot have his
    name omitted from the general election ballot, though he has
    since the primary became incapacitated from making an active
    campaign.

8. ELECTIONS—PRIMARY NOMINATIONS—WITHDRAWAL OF NOMINEE—
STATUTES—REPEAL.

The primary law (Stats. 1908–09, c. 198), having made a radical change in the manner of making nominations for election, the provisions therein which preclude the withdrawal of a candidate after nomination supersede any provisions in earlier statutes permitting officers to resign, even if a candidate after nomination and before election were an officer within such former statutes.

NORCROSS, C. J., dissenting.

APPEAL from the District Court of the Seventh Judicial District of the State of Nevada, Esmeralda County; *Peter J. Somers,* Judge.

*Mandamus* by the State, on the relation of J. P. Donnelley, as Chairman of the Republican County Central Committee of Esmeralda County, against Joseph Hamilton, as County Clerk of the county, to direct the removal of the name of a candidate from the official ballot. From an order granting relief, defendant appeals. **Reversed.**

The facts sufficiently appear in the opinion.

*James Redington* and *Horatio Alling,* for Appellant.

*J. F. Douglas* and *Frank J. Hangs,* for Relator.

By the Court, TALBOT, J.:

The question presented relates to the right of the nominee of a political party to have his name withdrawn or omitted from the general election ballot after he has been regularly nominated by a majority of the voters of his party. T. V. Eddy was so nominated at the late primary election as a candidate of the Republican party, to be voted for at the general election to be held next Tuesday, for the office of district judge of the Seventh Judicial District, comprising Esmeralda County. Having become incapacitated by inflammatory rheumatism from making an active campaign, temporarily at least, for he is now able to be delivering political addresses, he sent to the secretary of state and to the county clerk a resignation or communication, which was approved by the Republican county central committee of that county,

directing the withdrawal of his name from the list of candidates to be placed upon the ballot to be used at the general election. The appeal is from an order of the district court obtained by petitioner, acting as chairman of the Republican county central committee, directing the removal of the name from the official ballot and from the list of nominees being published in the newspapers.

The learned district judge took a humane view of the case, and was of the opinion that, "where the party realized that his condition of health was such that he was unable to make either a campaign for himself or a campaign in assistance of the party, it would seem that he not only could resign, but that it was his duty, as occurred to Col. Eddy from the letter presented to the Republican committee," and that "the affidavit that he would not resign is a requirement of a declaration of fealty to the party on the part of those receiving at its hands a nomination." We think these are considerations of policy or expediency for the legislature, and not for the courts, and that the answer to the question presented depends upon the act and intention of the legislature. If, under the language or policy of the statute providing for primary elections (Stats. 1908–09, c. 198), it appears that the legislature intended to prevent the withdrawal from the ticket of candidates after they had been nominated by the majority of the voters of the party, the court cannot modify the statute and make any exception, and allow candidates to withdraw under particular circumstances or for deserving reasons when the legislature has intended to prohibit withdrawals and has not made any exception for special cases in which they may be allowed.

The statute requires, by section 5, subd. 4, that each candidate upon filing his nomination papers make an affidavit stating, among other things, that he is a duly qualified elector, "and that if nominated he will accept such nomination and not withdraw, and that he will qualify as such officer if nominated and elected." The

candidate had filed that affidavit with his nomination papers preliminary to having his name placed upon the primary ballot, and he received a majority of the votes of his party at the primary election. It is provided in section 24 of the primary act (Stats. 1908–09, c. 198) that: "The person receiving the highest number (of votes) at a primary election as the candidate for the nomination of a political party for an office shall be the candidate of the party for such office, and his name as such candidate shall be placed on the official ballot voted at the ensuing election.   *   *   *"

Section 27 provides: "Vacancies occurring after the holding of any primary election shall be filled by the party committee of the city, county, city and county, district and state, as the case may be." There is no provision in the act in relation to withdrawals, except the one to which we have referred, by which it is required to be stated in the affidavit of the candidate filed with the nominating papers that if he is nominated he will accept such nomination and not withdraw.

The intention of the legislature controls the courts in the construction of statutes. (*State* v. *Ross,* 20 Nev. 61; *Thorpe* v. *Schooling,* 7 Nev. 15; *Maynard* v. *Newman,* 1 Nev. 271.)

It has also been held that it is the duty of the court to ascertain what the legislature had in view in adopting a statute, in order to secure, if possible, the object intended by the legislature. (*Odd Fellows' Bank* v. *Quillen,* 11 Nev. 109; *State* v. *Ross,* 20 Nev. 61; *State* v. *Dayton & V. & T. R. Co.,* 10 Nev. 155.)

In *Brown* v. *Davis,* 1 Nev. 409, it was held that in interpreting doubtful statutes the primary object is to ascertain the intention of the legislature, and that this intention is to be gathered from the language used and from the mischiefs intended to be suppressed or the benefits to be attained.

In *Roney* v. *Buckland,* 4 Nev. 45, it was held that in the interpretation of a statute the ultimate purpose is to be considered, and every sentence or section should

be interpreted with reference to the general object and with a view of giving it full and complete effect and to extend to all its parts logical and legal results. It has also been held that no part of a statute should be rendered nugatory if this can be properly avoided. (*Torreyson* v. *Board of Examiners,* 7 Nev. 19.)

Another well-settled rule of construction is that, where one section of a statute treats specifically of a matter, it will prevail over other sections in which incidental or general reference is made to the same matter. (*Long* v. *Culp,* 14 Kan. 412; *State* v. *Commissioner,* 37 N. J. Law, 228.)

It is said, at sections 157, 158, in Sutherland on Statutory Construction: "When the legislator frames a statute in general terms or treats a subject in a general manner, it is not reasonable to suppose that he intends to abrogate particular legislation to the details of which he had previously given his attention, applicable only to a part of of the same subject, unless the general act shows a plain intention to do so. Where there is in one act, or several contemporaneously passed, specific provisions relating to a particular subject, they will govern in respect to that subject as against general provisions contained in the same acts."

If by implication section 27, providing for the filling of vacancies, could, if there was no other provision in the act relating to withdrawals, be held in a general way to include vacancies occurring by the withdrawal of a candidate when the kind of vacancies to be filled, whether occurring by death or otherwise, is not stated, still the provision would be a general one and would be modified and controlled by the special one by which it is apparent that the legislature intended to prohibit the withdrawal of a candidate after he had been nominated by a majority of the votes of his party.

Counsel for petitioner urges that the candidate may withdraw because it is nowhere directly stated in the act that the petitioner may not withdraw. It is often held that the purpose and spirit of an act will control

the letter, but the wording and requirements of this statute indicate the intention of the legislature.   In the absence of any direct statement that he may or may not withdraw, we feel limited to a construction of the provision that the candidate shall state in the affidavit "that if nominated he will accept such nomination and will not withdraw."   The requirement of such a declaration by the candidate, regardless of whether it must be made under oath, indicates that the legislature intended that he should not be allowed to withdraw, and that he should keep and not repudiate the obligation exacted, for surely, if it were intended that he should be allowed to withdraw, and the legislature made any reference in the act to withdrawals, we must conclude that, instead of requiring an affidavit from the candidate that he would not withdraw, a provision would have been inserted allowing such withdrawal, or, if it were intended only to require a moral obligation or one to show good faith, the candidate would be required to make oath that he did not intend to withdraw, leaving him free to change his mind and withdraw.   The statute requires the candidate to state in the affidavit "that he affiliated with said party at the last preceding general election, and either that he did not vote thereat or voted for a majority of the candidates of said party at said next preceding general election, and intends to so vote at the ensuing election, and that if nominated he will accept such nomination and not withdraw."   As he need state only his intention as to how he shall vote, but must swear positively that he will not withdraw, a distinction is clearly expressed, and it is evident that the legislature intended to require not only a statement of his intention as to how he will vote, but an unconditional and continuing assurance that he will not withdraw.   This means even more than would a bare statement in the statute that the candidate shall not be allowed to withdraw, for it is reinforced by the requirement of an agreement under oath on his part, and this sworn obligation not to withdraw amounts to more than a mere promise that he will not

have his name taken from the ticket.   To hold that the requirement in the affidavit of the candidate that he will not withdraw implies that he may withdraw would be as inconsistent, and as contrary to the apparent purpose of the statute, as to hold that by providing that a witness shall take an oath to tell the truth, it was not intended by the legislature that he should be required to tell the truth.   We cannot discredit the legislature with the belief that the obligation was imposed with the intention of having it regarded only as a moral promise, without legal effect, to be lightly ignored by the candidate as he might desire, and at his instance by the courts. We must assume that our lawmakers, selected by popular vote as representative citizens, are honest and high-minded men, and that they do not purposely waste the time of the legislative session in passing idle, useless, or noneffective enactments, and that they would not impose such an obligation upon candidates for office without an intention of having it observed.   It is evident that this provision was inserted in the law for a beneficial purpose, and so that a candidate would not be allowed to trifle with the public or the voters of his party by withdrawing after he had voluntarily become a candidate and received a majority of the votes, and the state had been to the expense of a primary or other election.

Whether this affidavit of the candidate that he will not withdraw amounts to an estoppel because by making it he obtained the printing of his name on the ballot and a majority of the votes of his party at the primary election, and the incurrence of the expense of the primary election, including publishing, printing of ballots, canvassing and certifying returns, which pertained to him, and whether the agreement he made under oath may be legally enforced so as to compel him to act affirmatively, need not be determined for the purposes of this case.

The secretary of state has certified to the county clerk that he received a majority of the votes at the primary election as the candidate of his party for the office, and the clerk is following the direction in the statute that   .

he place the name upon the ballot to be voted at the general election. The petitioner is seeking to have the court compel the clerk to omit the candidate's name from the ballot. If, as contended by counsel, the taking of the oath not to withdraw were only a moral obligation, without legal force, and the committee of his political party is consenting and desiring that he be allowed to withdraw, nevertheless the withdrawal in law would be based upon the act and consent of the candidate, and if allowed at all it would clearly be a breach of a sacred obligation to himself and the public, and upon well-recognized legal and equitable principles the courts cannot aid him, nor any one who is seeking to assist him, in breaking his promise or agreement by ordering the clerk to omit his name from the ballot.

Whether, instead of requiring the affidavit, it would have been better for the legislature to have allowed candidates to withdraw after they had become nominated by receiving a majority of the votes of their party when by reason of accident, sickness, or other causes they become incapacitated after nomination to make the campaign or to fill the office, is a matter of policy for the legislature. We cannot lend assistance to the candidate or the petitioner in violating the obligation taken as required by the legislature because we may believe that it would be desirable to allow candidates to withdraw under exceptional or deserving circumstances, for the duty of the court is to construe these provisions of the statute as we find them. Otherwise we may usurp legislative functions.

Chief Justice Waite, speaking for the court in *Sinking. Fund Cases,* 99 U. S. 700, 718, 25 L. Ed. 496, said: "One branch of the government cannot encroach on the domain of another without danger. The safety of our institutions depends in no small degree on a strict observance of this salutary rule. See, also, *Fletcher* v. *Peck,* 6 Cranch, 87–128, 3 L. Ed. 162; *Dartmouth College* v. *Woodward,* 4 Wheat. 518–625, 4 L. Ed. 629; *Livingston County* v. *Darlington,* 101 U. S. 407, 25 L. Ed. 1015.

* * * It is not a part of their functions to conduct investigations of facts entering into questions of public policy, merely, and to sustain or frustrate the legislative will embodied in statutes, as they may happen to approve or disapprove its determination of such questions. If all that can be said of this legislation is that it is unwise or unnecessarily oppressive, * * * their appeal must be to the legislature or to the ballot box, not to the judiciary. The latter cannot interfere without usurping powers committed to another branch of government." (*Ex Parte Kair*, 28 Nev. 146.)

At the common law, which we have adopted, and which prevails in this state except as specially abrogated or where unsuitable to our conditions, a citizen could be required to perform the duties of an office. We have an earlier statute allowing officers to resign; but a candidate is not an officer, and, if he were, this provision of the later act of the legislature, passed for the purpose of prohibiting candidates from withdrawing after they have voluntarily taken the oath not to withdraw, would control the earlier statute, and any former ones relating to vacancies or withdrawals from the ticket. The scope of the new primary act indicates that the legislature intended to make a radical change in the methods by which nominees for public office are to be placed on the general election ballot. Instead of being selected by a comparatively few individuals, comprising a convention or a committee, they are now to be chosen by a majority of the votes of their party, cast in the booth, free from any undue influence. (*Riter* v. *Douglass,* 32 Nev. 400.)

Different provisions of the act strengthen the inference that when nominees are so chosen they are to remain upon the ticket in compliance with their oath not to withdraw, and that it was not the intention of the legislature to have them break this obligation by withdrawing and thereby allowing a committee to appoint nominees different from the ones selected by a majority of the votes of the party. If we should hold that one candidate may withdraw after taking the oath, all others

would have the privilege of withdrawing unless we legislate special exceptions into the statute when it contains none, and the legislative provision for this oath would become useless and in effect nullified by the court.

The case of *O'Connor* v. *Smithers,* 45 Colo. 23, 99 Pac. 46, presented by the petitioner, depended upon provisions of the Colorado statute specifically requiring the filing of an acceptance or declination by candidates. Other cases cited by petitioner are also based upon provisions different from any in force in this state.

With only one day for this decision, we are not able to give the case as extended consideration as desired; but, from the conclusions stated, it is apparent that it is not necessary to review any other questions argued.

The order of the district court is reversed.

SWEENEY, J.: I concur.

NORCROSS, C. J., dissenting:

The main question upon the merits in this case is the force and effect of that portion of section 5, subd. 4, of the primary election law, which requires that the candidate file an affidavit which shall contain, among other things, the following: "That if nominated, he will accept such nomination and not withdraw and that he will qualify as such officer, if nominated and elected." It is contended that this has the force and effect of a prohibition against the withdrawal of a candidate after he has been regularly nominated at the primary election. I am unable to agree with the contention that there is anything, either in the language itself, or in the policy of our law relative to elections, which will warrant any such construction being placed upon the language quoted. In my judgment the very language of the statute requiring the candidate for nomination to make affidavit that he will not withdraw presupposes the power to withdraw. If the legislature intended to prohibit successful candidates at the primary election from withdrawing, it would have said so in direct and positive terms, instead

of making a provision requiring the candidate to pledge himself in the most solemn manner possible that he would not withdraw.

In construing these provisions of the statute, we must not only consider the purpose and object of the act, which the legislature sought to accomplish, as manifested by its various provisions, but we should consider the condition of the law prior to the enactment of this statute. Prior to the adoption of the primary election law, candidates for office upon the various party tickets had the unquestioned right to withdraw therefrom whenever they saw fit and for such reasons as were satisfactory to themselves. This is clearly manifested by the provisions of what is known as the Australian ballot law, as may be illustrated by the following excerpt from section 7 of the last-named act: "Should a vacancy occur from any cause in the list of nominees for any office, such vacancy may be filled at any time before the day of election by the convention; or by a committee to which the convention has delegated power to fill such vacancies or by petitions as provided in section 4 of this act." (Stats. 1891, c. 40.)

The various laws relative to public officers contain specific provisions for the resignation of such officers at any time they see fit to do so, even before they be qualified for such office. There has never been in the laws of this state any restriction whatever upon the right, either of a candidate for a public office or for an officer, to withdraw from such nomination or to resign from such office whenever he saw fit to do so. The freedom of the citizen in this respect has at all times been clearly recognized by statutory provisions. It is not to be presumed that the legislature intended to make a radical change in this respect in the absence of language clearly indicating such an intention. There is nothing, in my judgment, in the primary election law which indicated any intention to restrict the privilege of withdrawal which candidates for office have heretofore enjoyed; upon the contrary there are many things in the act which, to my

mind, indicate the contrary intention.  As stated before, the language of the act in question presupposes the power inherent in the candidate to withdraw, if he sees fit to do so, else, why require him to make an affidavit that he will not do a thing which he could not possibly do if the law were otherwise?

The act relating to primary elections contains a number of provisions requiring affidavits upon the part, either of the candidate, or the elector.  Section 4 of the act also provides that a candidate for the office of state senator or that of member of the assembly may include with his affidavit a declaration, either that he will vote for the candidate for United States senator in Congress who has received for that office the highest number of the people's votes, or that he will consider the vote of the people at any primary election for United States senator as nothing more than a recommendation which he shall have the liberty wholly to disregard.  If he includes with his affidavit the former declaration that he will vote for the candidate for United States senator who receives for that office the highest number of the people's votes, it is conceded that such declaration can have no binding force upon him, but only imposes a moral obligation, for the reason that the constitution of the United States controls the manner of electing a United States senator.  The elector who signs a petition of a candidate for a particular nomination is required to make affidavit "that I intend to support for such nomination the candidate named herein."  It is manifest that this affidavit on the part of the elector is only to evidence his good faith at the time of making such affidavit.  By another provision of the primary act an elector proceeding to vote at the primary election may have his right to vote challenged and he is required to make "oath or affirmation as to his *bona fide* present intention to support the nominee of such political party or organization."

All these affidavits, in my opinion, are for the purpose of indicating the good faith of the elector at the time of

making the same. The elector who has made affidavit that it was his *bona fide* present intention to support the nominees of a certain political party may subsequently change his intention, and so with the elector who signs the petition for the nomination of a candidate for office. No penalty is imposed upon the candidate or elector for a violation either of the letter or the spirit of such an affidavit. In every case where an affidavit is required that a person will do a certain thing, there is a recognition of power within himself to do a contrary thing. A public officer is required to take an oath that he will support and defend the constitutions of the nation and state and perform all the duties of his particular office. He may violate every part of his oath. A witness upon the stand in the trial of a cause takes an oath to tell the truth, the whole truth, and nothing but the truth. He may, if he sees fit to do so, violate this oath and commit perjury. Many other examples might be given illustrating the correctness of the statement that the requirement of an oath to do a certain thing presupposes the power to do a contrary thing.

The main purpose and object of the primary election law is indicated by the following excerpt from its title: "An act to provide for the direct nomination of candidates for public office by electors, political parties and organizations of electors without conventions at elections to be known and designated as primary elections, determining the tests and conditions upon which electors, political parties and organizations of electors may participate in any such primary election.  *  *  *  *"

The object of the act, as indicated by its title, was mainly to provide for the direct nomination of candidates for public office by the electors of the several parties without the means of the convention system, under which abuses had grown up. There is nothing in the act which warrants the construction that a candidate nominated under the primary system is subject to any greater or different restrictions than before prevailed in the case of a candidate nominated under

the convention system. The act was designed to reach the abuses of the convention system, and not to restrict the powers of candidates which have at all times been recognized by the laws of this state. The affidavit required of the candidate that he will not withdraw, and that he will qualify if nominated and elected, is only intended to evidence the good faith of the candidate seeking the support of the members of his party organization. Manifestly, there is not any existing law by which a candidate for office, if he become elected, could be forced to qualify. Upon the contrary, there is specific statutory authority permitting him to resign any office to which he has been elected, before qualification, yet his refusal to qualify in such a case would be a violation of his affidavit. Candidates for political office have always been permitted to withdraw before election, and no serious difficulty has ever occurred in this state resulting from any such withdrawal. Language found in a statute is not to be given a strained construction, in order to avoid an imaginary evil which has never existed in the state and which, if given such construction, would be contrary to the established policy of the law which has prevailed for many years.

Undoubtedly the legislature did not intend that a candidate for a party nomination should treat such nomination lightly. It intended that he should assume the highest form of personal obligation that his candidacy was in good faith, an obligation such that common experience has shown is seldom broken for light or trivial causes; but, while so doing, the legislature recognized it would be a dangerous experiment to make an absolute prohibition against withdrawals. Many reasons may suggest themselves why the legislature did not intend to go further than to impose the highest possible moral obligation upon a candidate not to withdraw from a ticket after nominated. Unforeseen changes may occur in the affairs of a candidate at any time which would render it impossible for him, either in justice to himself or to his party, to remain upon a ticket. Suppose, for

example, that, after the primary election, the successful candidate for governor upon the ticket of either of the two great parties of the state should by reason of accident, illness or personal engagements be forced to leave the state before the general election, or is rendered incapable of performing the duties of the office, if elected, the strongest political reasons are presented why such candidate should be permitted to withdraw and his party organization be permitted to fill the vacancy. Withdrawal in such a case would only be a technical violation of the affidavit of the candidate, and, in my judgment, would not be contrary to the spirit of the election laws of the state. There is not, in my judgment, anything in the language of the statute in question which will impute to the legislature an intent to compel a majority party, say, to see the highest office in the state go to a minority party simply because its candidate has met with some unexpected misfortune which renders him incapable of fulfilling his obligation to his party. The construction given to this language by the prevailing opinion is dangerous in the extreme and leaves a political party powerless to protect itself against any unforeseen situation. The fact that cases may be imagined in which the right to withdraw may be abused is no argument, in my judgment, against the manifest intention of the legislature not to disturb the power that has always existed in a candidate for office to withdraw from such candidacy.

Section 27 of the primary election law provides: "Vacancies occurring after the holding of any primary election shall be filed by the party committee of the city, county, city and county, district or state, as the case may be." This is the only provision in the act relative to vacancies. There is no limitation as to what may cause the vacancy. If a candidate cannot withdraw from a nomination, then the only clear way a vacancy could exist would be by the death of such candidate. The Australian ballot law recognizes that vacancies may exist "for any cause," which includes withdrawal after nomination. There being nothing in the primary elec-

tion law clearly indicating any intention upon the part of the legislature to modify the existing law relative to the withdrawal of candidates, the language of the statute in question, in my opinion, does not prohibit a candidate for a public office from withdrawing from such candidacy. The candidate having the unquestioned power to withdraw, when he gives proper notice of such withdrawal, a vacancy is created in the nomination for such office, which vacancy the proper committee has the power to fill if it sees fit so to do.

In the case at bar, T. V. Eddy, the Republican nominee for district judge of the Seventh Judicial District comprising the county of Esmeralda, on or about the 30th day of September, 1910, served, on the county clerk of said county, notice in writing of his withdrawal as a candidate for such office. At the same time he addressed a letter to the Republican county central committee of Esmeralda County advising such committee of his action, and giving as a reason therefor his inability to enter into the campaign on account of ill health. The reasons given for his withdrawal have, in my judgment, no legal effect, but only go to the moral question as to whether there has been a wilful violation of a moral obligation. The answer of the county clerk to the petition in the lower court "admits that by law it is his duty  *  *  * to place upon the said official ballot only the names of such candidates as by law are entitled to have their name appear thereupon." This duty being admitted, it follows that the county clerk ought not to print upon the official ballot the name of a candidate who has regularly withdrawn his nomination for a given office. As the Seventh Judicial District comprises only the county of Esmeralda, it was not necessary to file the withdrawal with the secretary of state, nor was the secretary of state required to furnish the county clerk with any such certificate. As I view the law, the said T. V. Eddy had the legal right to withdraw from his candidacy for the office of district judge; that he properly filed notice of such withdrawal with the county clerk of Esmeralda

County; and that it thereupon became the duty of the county clerk to remove his name from the ballot.

It is not entirely clear to my mind that the writ of mandate ought to issue in every case where there has been a withdrawal of a candidate for office who has taken the affidavit provided for in the statute that he would not withdraw. It is a matter, which, I think, in the brief time permitted for consideration, probably should be left to the discretion of the trial court. There may be cases where the withdrawal is not supported by any sufficient reason therefor, in which event a court might very properly refuse to issue the extraordinary writ to compel the exercise of the legal duty of the clerk to remove the name from the ballot when the rights of others would not be affected. The trial court, however, deemed this a proper case for the issuance of the writ which was obtained by the official authority in the county of the political party which had placed the said T. V. Eddy in nomination.

Having reached the conclusion that the lower court properly determined the controlling question of law involved in the case, I am of the opinion that the judgment ordering the issuance of the writ should be affirmed.