[No. 2137]

# STATE OF NEVADA, Ex REL. GEO. B. THATCHER, PETITIONER. *v.* GEORGE BRODIGAN, AS SECRETARY OF STATE, RESPONDENT.

[142 Pac. 520]

1. TIME—COMPUTATION—EXCLUDING SUNDAY.
    Stats. 1913, c. 61, sec. 1, providing that whenever a secular act is to be performed on a particular day, and that day is a nonjudicial one, the act may be performed on the next judicial day, does not permit a nominee at a primary election to be held September 1 to file his papers on August 3, though August 2 falls on Sunday; section 7 of subchapter 3 of election law of 1913 (Stats. 1913, c. 284) providing that such papers shall be filed at least thirty days prior to the primary election.

2. ELECTIONS—WITHDRAWAL OF CANDIDATES AT PRIMARY ELECTION.
    Election law of 1913 (Stats. 1913, c. 284), subc. 3, sec. 7, requiring a candidate filing nomination papers for the primary election to make affidavit that he will not withdraw, does not prevent a candidate who has filed his papers from withdrawing prior to the election, but he cannot withdraw where he is without opposition and becomes the nominated candidate by virtue of Stats. 1913, c. 284, subc. 3, sec. 14, subd. 9, providing that the names of candidates who are without opposition shall not be printed on the primary ballot, but shall be certified as the party nominees.

3. ELECTIONS—NOMINEES AT PRIMARY—EFFECT OF WITHDRAWAL.
    Where, in such case, one of two opposing nominees withdrew after the time for filing nomination papers, but before the primary election, the other nominee became the candidate by operation of Stats. 1913, c. 284, subc. 3, sec. 14, subd. 9, and the secretary of state must certify his name as the candidate of his party, though he filed withdrawal papers before the primary election, but after the withdrawal of the other candidate for nomination.

4. ELECTIONS—NOMINATION PAPERS—RIGHT TO CHANGE PARTY.
    Under election law of 1913 (Stats. 1913, c. 284), subc. 3, sec. 7, providing that a candidate at a primary election shall declare in his nomination papers that he intends to support the principles of the party of which he is a candidate, and that he voted for a majority of the candidates of such party at the last election, one who has filed nomination papers as a candidate of a designated party at the primary election cannot file another nomination paper designating himself as a candidate of another party for the same office.

5. ELECTIONS—FILING FEE—WITHDRAWAL—REFUNDMENT.
    One who files nomination papers under the election law of 1913 (Stats. 1913, c. 284), subc. 3, sec. 9, providing that the candidate filing such papers "shall pay" to the secretary of state "a fee for such filing," is not entitled to a return of such

fee on his withdrawal as a candidate prior to the primary election, though such fee is required to be paid into the state treasury.

NORCROSS, J., dissenting, except as to 4, *supra.*

ORIGINAL PROCEEDING in prohibition by the State, on the relation of Geo. B. Thatcher, against George Brodigan, Secretary of State. **Writ issued.**

*Geo. B. Thatcher,* Attorney-General, and *W. W. Griffin,* for Petitioner.

*Summerfield & Richards, George Springmeyer,* and *Richard A. McKay,* for Respondent.

By the Court, McCARRAN, J.:

By this action, the petitioner, the attorney-general, seeks to compel the secretary of state to certify the names of Raymond A. Gott and Richard A. McKay as candidates for the Republican nomination for the office of attorney-general. By the same action petitioner seeks to prohibit the secretary of state from certifying the name of George Springmeyer as a Republican candidate for the office of attorney-general.

As appears from the petition, Richard A. McKay and Raymond A. Gott, respectively, filed their nomination papers for the Republican nomination for the office of attorney-general with the secretary of state on the 1st day of August, 1914. Thereafter and on the 3d day of August, 1914, Raymond A. Gott filed an instrument withdrawing his name as a candidate for the Republican nomination, and on the same day, and some half hour later Richard A. McKay filed a similar instrument with the secretary of state also requesting that his name be not placed on the ballot for the Republican nomination for attorney-general at the September primary election.

It appears from the petition that on the 27th day of June, 1914, George Springmeyer filed in due form his nomination paper as a candidate for the Progressive nomination for the office of attorney-general, and paid the requisite fee therefor. On the 1st day of August, 1914,

the said Springmeyer filed a second paper in the office of the secretary of state, which paper is as follows:

"State of Nevada, County of Ormsby—ss.:

"For the purpose of having my name placed on the official primary election ballot as a candidate for nomination by the Republican party as its candidate for the office of attorney-general of the State of Nevada, I, the undersigned George Springmeyer, do solemnly swear that I reside at No. 416 South Virginia Street, in the city of Reno, county of Washoe, State of Nevada, and that I am a qualified elector of the election precinct in which I reside; that I am a member of the Progressive party, and affiliated with that party at the last general election, and voted for a majority of the candidates of such party at the last general election; that there is a substantial fusion between the Republican and Progressive parties in this state at the present time; that I believe in and intend to support the principles and policies of both such political parties, as represented by such fusion, and that I intend to vote for a majority of the candidates of the Progressive party and as well of the Republican party at the ensuing election; that, if nominated as a candidate of said Republican party at said ensuing election, I will accept such nomination, and not withdraw; that I will not knowingly violate any election law or any law defining and prohibiting corrupt and fraudulent practice in campaigns and elections in this state; and that I will qualify for said office if elected thereto.

"[Signed]   George Springmeyer."

Two propositions are presented in this matter: First, may Richard A. McKay and Raymond A. Gott withdraw their names from the list of candidates to be certified by the secretary of state to the various county clerks, they having once filed their nomination papers for the purpose of having their names placed on on the official primary election ballot as candidates for nomination by the Republican party and as its candidate for the office of attorney-general? Second, where a party has filed his nomination paper for the purpose of having his name placed on the

official primary ballot as a candidate for nomination by one recognized party, may he thereafter have his name placed on the primary ballot as a candidate of another recognized party, and thereby become a candidate for the nomination of two separate and distinct parties for a given office at the same primary, when he is unable to file a nomination certificate complying with all the conditions demanded by the statute?

The legislature of 1913 passed an act entitled "An act relating to elections and removals from office," in which act chapter 3 has to do with primary elections. Section 7 of the chapter is as follows:

"The name of no candidate shall be printed on an official ballot used at any primary election unless, at least thirty days prior to the primary election, if the candidate is to be voted for at the September primary election, and at least fourteen days prior to the primary election other than the September primary election, he shall file a nomination paper with the proper official as hereinafter provided by this act, such nomination paper to be under oath and in substantially the following form:

"Nomination Paper of............, for the Office of.............

"State of Nevada, County of............, ss.

"For the purpose of having my name placed on the official primary election ballot as a candidate for nomination by the ............ party as its candidate for the office of ............, I, the undersigned, ............, do solemnly swear (or affirm) that I reside at No. ........ ............ Street, in the city (or town) of ............, county of ............, State of Nevada, and that I am a qualified elector of the election precinct in which I reside; that I am a member of the..........party; that I believe in and intend to support the principles and policies of such political party in the coming election; that I affiliated with such party at the last general election of this state and I voted for a majority of the candidates of such party at the last general election (or did not vote at such general election, giving reasons); that I intend to vote for a majority of the candidates of said party at the ensuing election for which I seek to be

a candidate; that if nominated as a candidate of said
.............. party at said ensuing election I will accept such
nomination and not withdraw; that I will not knowingly
violate any election law or any law defining and prohibit-
ing corrupt and fraudulent practice in campaigns and
elections in this state; and that I will qualify for said
office if elected thereto.   *   *   * " (Stats. 1913, c. 284.)

[1] It is suggested by the attorney-general, petitioner
herein, that inasmuch as under our law the primary
election being set for the first Tuesday in September,
and coming as it does on this occasion on the first day of
September, and as the last day of filing nomination papers
fell on Sunday, the 2d day of August, a nonjudicial day,
nomination papers might be filed on Monday, the 3d of
August.   We are referred by petitioner to an act of the
legislature of 1913, which provides:

"Whenever any act of a secular nature, other than a
work of necessity or mercy, is appointed by law or con-
tract to be performed upon a particular day, which day
falls upon a holiday or a nonjudicial day, it may be per-
formed upon the next business day with the same effect
as if it had been performed upon the day appointed, and
if such act is to be performed at a particular hour it may
be performed at the same hour on the next business day."
(Stats. 1913, p. 49.)

An identical statutory provision was construed by the
Supreme Court of Idaho in a case very much analogous
to the one at bar.   (*Seawell* v. *Gifford, Secretary of State,*
22 Idaho, 295, 125 Pac. 184, Ann. Cas. 1914A, 1132.)   In
this case it was held that under such statute at least thirty
days must intervene between the date of the filing and
the day of the primary election.   We think the reasoning
in this case is applicable to the matter at bar, in so far as
it answers the suggestion of petitioner.

[2, 3] Section 14, c. 3, of the Statutes of 1913 provides:

"9. Where there is no party contest for any office the
name of the candidate for party nomination shall be omit-
ted from the ballot and shall be certified by the proper
officer as a nominee of his party for such office."

In the case of *State of Nevada, ex rel. Donnelley,* v. *Hamilton,* 33 Nev. 418, 111 Pac. 1026, this court held that the question whether a candidate nominated at the primary election may have his name omitted from the general election ballot is a matter of policy for the legislature, and, where the legislature forbids the withdrawal of candidates nominated at the primary, the court cannot allow candidates to withdraw even for deserving reasons.

It will be observed that the form of affidavit prescribed by section 7, c. 3, of the act requires the candidate, in filing his nomination paper, to make affidavit that, if nominated as the candidate of his party at the ensuing primary election, he will accept such nomination and not withdraw.

The decision in the case of *Donnelley* v. *Hamilton, supra,* dwelt upon the question of withdrawal after nomination. The question at bar is the right of one who had filed his nomination paper, but whose name has not as yet been certified by the secretary of state, to withdraw prior to the primary election.

Under the provisions of section 14, chap. 3, a party who had filed his nomination paper with the secretary of state within the time and who at the expiration of the time allowed by law had no opposition for his party nomination is entitled to a certificate from the secretary of state declaring him the nominee of his party.

If either of the parties seeking now to have their names withdrawn were without opposition, or, in other words, if they did not oppose each other for the nomination of a designated party, in our judgment, they could not, under our interpretation of section 14 heretofore set forth, withdraw, because, under those conditions, either one standing alone would immediately, upon the expiration of the time for filing nomination papers, become the nominee of his party, and, under the rule as asserted in the Donnelley-Hamilton case, *supra,* he could not withdraw.

But in this case neither of the parties who filed their nomination papers with the secretary of state and who now seek to withdraw could be considered as the

nominee of their party until one or the other had been eliminated by the primary election of September 1, or one or the other had withdrawn.

There are no specific provisions in the statute of 1913 prohibiting withdrawals, excepting that which appears in section 14 heretofore set forth, and which becomes operative only where the circumstances of an individual candidate without opposition make it operative. We find nothing in the statute that even impliedly prohibits a candidate for party nomination from withdrawing from a contest for that nomination. The provision of the statute requiring a candidate to take an oath that he will not withdraw, if nominated, may reasonably imply, in our judgment, that prior to his receiving the nomination he may withdraw.

The reasoning and the rule which would prohibit one already nominated from withdrawing does not, in our judgment, apply to one who had not secured the nomination either by party expression in the primary election, or statutory provision, such as that of section 14, subd. 9.

In the case at bar, as we view it, there was nothing in the law which would prevent the first party applying to withdraw from having his application complied with. In other words, Raymond A. Gott, having applied to the secretary of state to have his name withdrawn, could, in our judgment, properly have that request complied with. As soon, however, as his name was withdrawn, the other party to the contest for Republican nomination, namely, Richard A. McKay, became, by operation of the law (subd. 9, sec. 14) the party nominee for the office of attorney-general, and, having become the party nominee, under the statute, and under the rule as laid down by this court in the case of *Donnelley* v. *Hamilton, supra,* he could not withdraw.

[4] As to the second question, the statute prescribes the form of affidavit to be made by way of nomination paper, and declares that nomination papers shall be in substantial form as prescribed. By this declaration of the statute it is our judgment that the legislature intended that the

substantial elements of the prescribed affidavit should be contained in the affidavit made by the party seeking nomination, and the substantial elements in the prescribed affidavits, as we read it, are:

First—Desire of the party to have his name placed on the primary ballot.

Second—Designation of the office for which he seeks party nomination.

Third—Place of residence, giving the city or town and locality therein, together with the county of the state in which the city or town may be located.

Fourth—Qualified electorship in the precinct in which he declares his residence.

Fifth—Declaration of party membership, together with the declaration of intent to support the principles of such party at the coming election.

Sixth—Declaration of having affiliated with that same party at the last general election held in this state.

Seventh—Declaration that he voted for a majority of the candidates of that party at such last general election, or that he did not vote at all.

Eighth—Declaration that he intends to vote for a majority of the candidates of that party of which he is a member and whose principles he intends to support at the ensuing election, in which he seeks to be a candidate.

Ninth—That, if nominated by that party, he will accept such nomination, and not withdraw.

Tenth—Declaration of intention to comply with election laws.

Eleventh—Declaration that, if elected to the office which he seeks, he will qualify for such office.

By these declarations under oath, made prerequisites for one seeking party nomination, it was undoubtedly intended to require the applicant to declare the party of which he was a member and with which he affiliated at the last general election, and this must be the same party under whose party designation he seeks the nomination at the ensuing primary. Every substantial element of the nomination paper and the oath therein

prescribed precludes the idea of an applicant for nomination seeking the nomination of two distinct parties at the same primary.

The object of the primary law, generally speaking, was to avoid those things which under the old convention system were believed to be corrupt. The spirit of the law was to get a popular expression as to choice of candidates from the membership of the respective political parties within the state. The various changes, amendments, and modifications of our primary laws that have been enacted by recent legislatures have had for their purpose and aim the elimination of one political party from the primary election of another, the object being to prevent one political party from interfering with another as to the selection of party nominees for the various offices.

In the case at bar, Mr. Springmeyer, having filed his nomination paper in due form for the nomination for attorney-general on the Progressive party, could not, as we view the law, successfully apply for the nomination on a different party. Moreover, his paper seeking nomination on the Republican party and the declarations therein contained are not even substantially in conformity with the substance of the nomination paper prescribed by section 7, chapter 3, of the election laws of Nevada.

[5] Section 9 of chapter 3 of the election laws of Nevada provides:

"Any candidate filing a nomination paper as provided in section 5a with the proper officer, as provided in section 6, shall pay to such officer a fee for such filing as follows:

"If a candidate for nomination for any state office, or any district office voted in more than one county, or representative or United States senator in Congress, one hundred dollars."

By the provisions of the statute set forth above the money paid by a candidate filing a nomination paper is paid to the secretary of state in this instance as a "fee for such filing." In the case at bar the services of the secretary of state were performed in the way of filing

the nomination paper for which it appears from the record that the nomination paper of Raymond A. Gott was filed with the secretary of state and all the services required of the secretary of state in the way of filing were duly performed. The ministerial officer of the state, to wit, the secretary of state, having performed the services required of him under the law, was entitled to the fee designated by section 9 of chapter 3 of the act, and the fact that this fee so paid was thereafter to be turned over to the state treasurer, as other moneys collected by the secretary of state are turned over to the state treasurer for ministerial services performed, did not change the nature of the fee, and the same, having been paid to the secretary of state for filing services performed, cannot, in our judgment, be returned to the party seeking to have his name withdrawn. This might properly be considered in the nature of a forfeiture, but that is unnecessary for us to determine in this instance.

For the foregoing reasons the writ of prohibition should issue directed against the secretary of state, prohibiting him from certifying the name of George Springmeyer as a candidate for the nomination of the Republican party for the office of attorney-general, and the writ should also issue prohibiting the secretary of state from allowing the name of Richard A. McKay to be withdrawn. The writ should also issue prohibiting the secretary of state from returning the filing fee paid by Raymond A. Gott.

It is so ordered.

TALBOT, C. J.: I concur.

NORCROSS, J., dissenting:

I dissent from the opinion and order except in so far as it prohibits the secretary of state from certifying the name of George Springmeyer as a candidate for the Republican nomination for the office of attorney-general. The statute requiring a substantial compliance with the form of affidavit prescribed for candidates is, I think, not complied with. It is incumbent upon the candidate,

among other things, to set forth substantially that he is a member of a certain political party—in this case the Republican party.

In the matter of the withdrawal of McKay I cannot concur. Even if my learned associates had not cared at this time to overrule the decision in *State* v. *Hamilton,* there was room, in my judgment, to distinguish the present case from the Hamilton case. As I expressed my views very fully in the dissenting opinion in the Hamilton case (33 Nev. 427), I shall add but little to what I there said. To hold that a mere requirement in an affidavit of candidacy—"that if nominated, he will accept such nomination and not withdraw and that he will qualify as such officer, if nominated and elected"—is equivalent to a statutory prohibition against a candidate withdrawing, to my mind, is an unwarranted construction to be placed on the statute. Such holding attributes to the legislature an intent virtually to make death the only means by which the name of primary candidates or party nominees may be removed from an official ballot; All the unforeseen conditions which may unexpectedly befall a man are to be of no avail after he has once made an affidavit of candidacy. The dominant party of the state, in the event its candidates for governor or senator, from some unforeseen cause, are rendered incapable of continuing to be a candidate or from qualifying if elected, is impotent to relieve itself from the condition which the court holds this affidavit places a party and a candidate in. The legislature intended that a candidate should express his good faith by making the prescribed affidavit. It cannot be held to have intended that the success of a great party must depend upon the slender thread that unforeseen conditions will not befall its leading candidates such as to virtually incapacitate them from election or from continuing as active candidates. Nothing, as I see it, stands in the way to prevent a party being compelled to go to the general election with one or, more incapacitated candidates except the benign interposition of Divine Providence.