[L. A. No. 4892. In Bank.—August 18, 1916.]

## WALTER BORDWELL, Petitioner, v. W. B. WILLIAMS, County Clerk of Orange County, Respondent.

ELECTIONS—RIGHT TO SEEK OFFICE—WITHDRAWAL OF CANDIDATE.—The right to seek election to any office is open to all persons possessing the constitutional or statutory qualifications. A citizen is, however, under no obligation to seek election to an office. He may be a candidate or refuse to be such, at his option, and in the absence of statutory provision to the contrary, the mere fact that he has once announced his candidacy for an office does not prevent him from withdrawing as a candidate whenever he sees fit so to do.

ID.—PRIMARY ELECTION—CANDIDATE FOR NOMINATION MAY WITHDRAW PRIOR TO ELECTION—OMISSION OF NAME FROM BALLOTS—MANDAMUS.—The direct primary law (Stats. 1913, p. 1379), permits a candidate for nomination to an office at a primary election, after having regularly qualified as such, and after his name had been regularly certified by the Secretary of State to the various county clerks and registrars as a candidate, to withdraw his candidacy for such nomination prior to the election, and, under section 27 of such act, *mandamus* will lie directing the officials having control of the preparation of the ballots to omit his name therefrom.

ID.—AFFIDAVIT NOT TO WITHDRAW IF NOMINATED.—The provision of the primary election law, requiring the elector, before having his name placed upon the ballot as a candidate, to sign an affidavit stating that if nominated he will accept such nomination and not withdraw, is applicable only to the condition existing after the primary election, at which, if at all, he will be nominated.

APPLICATION for a Writ of Mandamus directed to the County Clerk of Orange County.

The facts are stated in the opinion of the court.

Samuel M. Shortridge, Catlin, Catlin & Friedman, Frank P. Doherty, C. E. Spencer, and W. S. Woodworth, for Petitioner.

L. A. West, for Respondent.

SLOSS, J.—This is a proceeding in *mandamus* to compel the county clerk of Orange County to omit from the ballots to be prepared by him for use in the forthcoming primary election, the name of the petitioner, Walter Bordwell, as a candidate for the Republican nomination for the office of

United States senator. The election is to be held on August 29, 1916. An alternative writ has issued and the respondent has made return thereto. The material facts are not in controversy.

Pursuant to the provisions of the "direct primary law" (Stats. 1913, p. 1379), a committee of five electors proposed the name of the petitioner as a candidate at the said primary election for the Republican nomination for the office of United States senator. They duly appointed verification deputies in the several counties, and nomination papers signed by the requisite number of qualified electors were filed in the county of Los Angeles and other counties. The signatures were examined and the registrars or county clerks of the various counties duly certified to the Secretary of State a sufficient number of qualified electors to entitle the petitioner to have his name placed upon the primary ballot. Within the time allowed by the statute, i. e., not less than 35 days before the election (sec. 5, subd. 4), Mr. Bordwell filed with the Secretary of State his affidavit stating, in addition to the other matters required, that if nominated he would accept such nomination and not withdraw, and that he would qualify as such officer if nominated and elected.

The Secretary of State thereupon certified the name of the petitioner to the respondent and to the county clerks and registrars in the several counties, directing said officers to print on the primary ballot the name of the petitioner as a candidate for the Republican nomination for the office of United States senator.

After receiving such certificate, the respondent published, as required by section 10 of the act, the names and addresses of all persons, including the petitioner, for whom nomination papers had been filed in the office of the Secretary of State. He also caused to be prepared sample ballots including, among other names, that of petitioner, and has directed the printing of official ballots in like form.

On the ninth day of August, 1916, petitioner notified the Secretary of State, the respondent herein, and all county clerks and registrars of voters, that he had withdrawn as a candidate for said nomination, and directed each of said officials not to print or publish his name upon any primary ballot to be used in said election on August 29th. The respondent refuses to have the name of the petitioner removed from the

ballot, and the purpose of this proceeding is to compel such removal.

The right to seek election to any office is open to all persons possessing the constitutional or statutory qualifications. A citizen is, however, under no obligation to seek election to an office. He may be a candidate or refuse to be such, at his option, and in the absence of statutory provision to the contrary, the mere fact that he has once announced his candidacy for an office does not prevent him from withdrawing as a candidate whenever he sees fit so to do.

Does our statute change this rule? In other words, does the fact that Mr. Bordwell, and the committee acting on his behalf, had taken the necessary steps to enable him to become a candidate at the August primary election, constitute a bar to his withdrawing his candidacy for such nomination prior to the election? The act contains nothing which in direct terms bears upon the question of withdrawal at this stage. Before any elector may have his name placed upon the ballot as a candidate, he must sign an affidavit stating that if nominated he will accept such nomination and not withdraw. But this provision, obviously, has application only to the condition existing after the primary election, at which, if at all, he will be "nominated." We need not here inquire whether the provision for this affidavit carries with it an implied prohibition against withdrawal by a candidate who has been successful in obtaining a party nomination at the primary. The court of appeals of Kentucky has held, under a statute very similar to ours, that a withdrawal may be made after the election. (*Elswick* v. *Ratliff*, 166 Ky. 149, [179 S. W. 11].) The contrary view has been expressed by the supreme court of Nevada. (*State* v. *Hamilton*, 33 Nev. 418, [111 Pac. 1026].) But without regard to this question, it is perfectly clear that the statute does not, either in terms or impliedly, prohibit a withdrawal before the election. On the contrary, the fact that the statute in terms requires an affidavit that the candidate will not withdraw *if nominated* gives persuasive indication that a withdrawal before nomination (i. e., before the primary election) was contemplated by the framers of the act as authorized. And such is the holding in a late Nevada case (*State* v. *Brodigan*, 37 Nev. 458, [142 Pac. 520]), in which the earlier decision in *State* v. *Hamilton* is distinguished upon this very ground.

If, then, the petitioner has the right to withdraw his candidacy for the nomination, the right should be made effectual and operative unless some insuperable obstacle intervenes. We find no such obstacle in the statute. Much stress is laid upon the fact that under section 10 of the act, the county clerk or registrar is required to publish the names which appear upon the certified list transmitted to him by the Secretary of State, and that this list is to contain the names "of each person for whom nomination papers have been filed in the office of such Secretary of State." So, too, section 12, defining the form of ballots, provides "that the names of all candidates for the respective offices for whom nomination papers have been duly filed shall be printed thereon." Undoubtedly the county clerk acts ministerially, and the information upon which he so acts is that received by him from the Secretary of State. But it does not follow that the certificate of the Secretary of State must finally conclude everyone with respect to the form and contents of the ballot. Section 27 of the act authorizes an application to this court, to a district court of appeal or to a superior court, whenever it shall be made to appear "that an error or omission has occurred or is about to occur in the placing of any name on an official primary election ballot, that any error has been or is about to be committed in printing such ballot, or that any wrongful act has been or is about to be done by any. . . county clerk, registrar of voters . . . or other person charged with any duty concerning the primary election," and authorizes the court to order the officer or person charged with such error, wrong, or neglect to correct the error, desist from the wrongful act, or perform the duty. This is broad language, and we think it was designed to vest in the courts a broad control over all officers performing duties in connection with the primary elections. With respect to the names of the candidates to be placed upon the ballots, the remedy is not, under this section, limited to an application to compel the Secretary of State to issue the proper certificate. The power of that officer to transmit certified lists of candidates expires 30 days before the primary election. After that date all duties connected with the preparation of the ballots are confided to the county clerks or registrars of voters. It cannot have been contemplated that an error or impropriety in a proposed ballot should be beyond correction after the Secretary of State had once issued his

certificate and the time within which he could issue a corrected certificate had expired. If he should, on the last day allowed by law, issue a certificate which omitted the name of a candidate whose name should be upon the ballot, the only possible remedy would be by application to a court for an order requiring the county clerk or registrar of voters to make the necessary correction. Just such an application is, we think, contemplated and authorized by section 27 of the act, and we think the situation is the same where, by reason of circumstances arising after the Secretary of State has made his certificate, the correct form of ballot is not that indicated by his certificate.

This interpretation of the statute is in accord with the fundamental purpose of all election laws, i. e., to enable the voters to exercise a free, orderly, and intelligent choice. We can conceive of no good reason why a ballot should contain the name of a person who is not in fact a candidate for nomination, even though he may once have taken the steps which entitle him to become such candidate. The presence of his name (like that of a candidate who has died) could operate only to deprive uninformed electors of their votes, to the injury of one or more of the actual candidates, and to the possible perversion of the true popular will. We are not prepared to hold that the law requires this result. To give to the certificate of the Secretary of State the conclusive effect contended for by the respondent would be to elevate form above substance. We believe, on the contrary, that the statute contemplates a submission to the electors of a choice between persons who are candidates in fact, and that where, from any cause, the ballots do not present that choice, the courts are authorized, under section 27 of the act, to direct the officials having control of the preparation of the ballots to prepare them in proper form.

It need hardly be said that an application of this kind must be made sufficiently early to enable the officials to have the necessary alterations put into effect. In the present case it appears that the time to intervene before the date of the election will be sufficient for the respondent to obey the writ which is to issue. We assume that the officials of other counties will take action in harmony with the views here expressed. If, as suggested at the hearing, it will be impossible in some instances to alter the sample ballots, the spirit of the present

ruling can be carried out, as far as possible, by changing the form of the official ballots to be furnished to the voters.

A peremptory writ will issue as prayed.

Lorigan, J., Melvin, J., and Henshaw, J., concurred.

Shaw, J., because of temporary absence, has not participated.

HENSHAW, J., Concurring.—I concur in everything that is said in the prevailing opinion. It certainly will not be questioned that an elector has the inherent right, under our system of government, of offering himself as a candidate for office, and, after having offered himself, to withdraw his name and retire from the political contest at any time that he sees fit. The sole limitation upon this unquestioned right is the limitation which may be fixed upon it by law. The only limitation which our law has seen fit to impose is that inferentially contained in the requirement of a candidate to make an affidavit that ''if nominated'' he will continue his candidacy for and seek election to the office. The legislature having seen fit thus to restrict the right of withdrawal after nomination, and having placed no restriction upon the right of withdrawal before nomination, under every canon of construction that right of withdrawal before nomination still rests with every candidate for office. Such was the unanimous view of the supreme court of Nevada in the case cited in the prevailing opinion. Therefore, no right to withdraw his name as a candidate from the primary ballot is expressly or impliedly given to any candidate because it is not necessary that it should be expressly or impliedly given. The right is his unless it is taken away by positive law, and there is no positive law so doing. Nor is it necessary that there should be any specific mode prescribed by which any withdrawal can be effected. It is a reflection upon our jurisprudence to say that its general remedies are not adequate, as they were found to be by the supreme court of Nevada under a statute in all particulars identical with our own.

But conceding the right of withdrawal to exist, the dissentient view is that the legislature designed that this right should have no effect because the law also says that county clerks shall print the ''names of all candidates for the re-

spective offices for whom nomination papers have been duly filed.'' Such a construction is but the veriest sticking in the bark. To attribute such a meaning to the legislature is deliberately and unnecessarily to charge it with the design of deluding and deceiving the electors of the state. For under that construction it is not denied that it means that the name of a candidate who has died may not, even though the fact be timely and officially brought to the notice of the county clerks, be omitted from the ballot to be printed; that if the sole candidate of a political party has been convicted of a felony and thus disqualified from holding office, the legislature designed in both such and all like cases that the name of the dead man and that the name of the felon should remain upon the ballot, notwithstanding that if they received a majority of the votes neither could take office, and the result would be either that a man whom the people by their votes had not selected would fill the office, or that the state must be subjected to the added and unnecessary expense of another election. I am unwilling myself to charge the legislature in its enactment of the primary law with any such stupidity or evil design. Nor is it necessary that this should be done, whenever, as here, notification of withdrawal, of death, or of legal disqualification to hold the office is under timely notice officially made known to the county clerk.

The provisions of the primary law calling upon the county clerks to print upon the primary ballot the names that have been certified to them by the Secretary of State, by every reasonable intendment means only that those names shall be printed unless changes shall have occurred within the contemplation of the law, such changes as in fact are contemplated and provisions for which are made by section 27 of the act quoted in the prevailing opinion, and the forced construction which unnecessarily is sought to be given to this, I repeat, convicts the legislature, without any express language to that effect, of a design to make the primary election ridiculous by compelling, to the deception of the voters, the retention of the name of a man who is dead or has been sent to the state prison.

ANGELLOTTI, C. J., Dissenting.—I dissent.

Desirable as may appear to be the result reached by the court in this proceeding, I am unable to concur therein in

view of my understanding of the meaning of the provisions of the direct Primary Act.

In proposing to place the name of Mr. Bordwell on the primary ballot as a candidate for the Republican nomination for United States senator, notwithstanding his attempted withdrawal as a candidate after having regularly qualified as such, and after his name had been regularly certified by the Secretary of State to the various county clerks and registrars as a candidate, the county clerk of Orange County is, in my opinion, simply proposing to follow the plain mandate of the Primary Act. If this be the situation, of course we have no authority to order him to do otherwise.

The clerk is simply proposing to print on the primary ballot, as candidates for the Republican nomination for United States senator, the names of all persons "for whom nomination papers (including the affidavit of the candidate himself stating that he desires to be a candidate) have been duly filed" (Primary Act, subd. 4, sec. 12), *as such names have been correctly certified to him by the Secretary of State* (Primary Act, sec. 10), and all this the Primary Act expressly requires him to do.

No right to withdraw his name as a candidate from the primary ballot is expressly or impliedly given any such person by any provision of the Primary Act, no mode by which any withdrawal can be effected is even suggested by any provision of the act, and I cannot read the act otherwise than as clearly contemplating that there can be no such withdrawal, and that the certificate of the Secretary of State when made in full accord with the law is absolutely conclusive on county clerks and registrars as to the names which shall be placed on the primary ballot.

Lawlor, J., concurred.